## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | Case No. 19-18459 MER |
| | ) | |
| Frictionless World, LLC | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| Frictionless World, LLC, | ) | |
| | ) | Adversary Proceeding No. 19-01282 MER |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Frictionless, LLC; Changzhou Inter Universal | ) | |
| Machine & Equipment Co., Ltd.; Li Zhixiang; | ) | |
| Changzhou Zhong Lian Investment Co., Ltd.; | ) | |
| Serena Li; and Frank Li, | ) | |
| | ) | |
| Defendants. | ) | |

## SPECIAL OBJECTION TO THE DEBTOR'S MOTION AUTHORIZING ALTERNATIVE FORMS OF SERVICE ON DEFENDANTS MINGSU LI AND JUN LI

## <u>TABLE OF CONTENTS</u>

**Page**

NOTICE OF SPECIAL APPEARANCE AND RESERVATION OF RIGHTS ......................... 1

PRELIMINARY STATEMENT ................................................................................. 2

BACKGROUND FACTS ......................................................................................... 3

ARGUMENT ....................................................................................................... 5

    I.      The Hague Convention Governs the Debtor's Motion. ......................................... 5

    II.     The Debtor's Requested Relief is Barred by the Hague Convention, Which Prohibits Service on Chinese Nationals Like Mr. and Mrs. Li via Email. ........................................................................................................ 7

          A.     The Hague Convention Applies to the Debtor's Efforts to Serve Mr. and Mrs. Li in China ............................................................. 7

          B.     The Hague Convention, As Adopted By China, Bars Service on Chinese Nationals Like Mr. and Mrs. Li Via Email ................................. 7

    III.    In Addition to the Hague Convention's Prohibition on Service by Email on a Chinese National, the Debtor's Complete Failure to Attempt Service by Conventional Means Precludes Alternative Service Under Rule 4(f). ........... 13

CONCLUSION ...................................................................................................... 20

CERTIFICATE OF SERVICE .................................................................................. 21

Active/50946727.2

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Agha v. Jacobs,*
No. C 07-1800 RS, 2008 WL 2051061 (N.D. Cal. May 13, 2008) ........................................10

*Am. Express Co. v. Xiongwen Rui,*
No. CV-18-01281-PHX-DWL, 2019 WL 1858101 (D. Ariz. Apr. 25, 2019)........................17

*Blumedia, Inc. v. Sordid Ones BV,*
No. 10–cv–01158–MSK–KLM, 2011 WL 42296 (D. Colo. Jan. 6, 2011) ............................13

*Clancy Systems Int'l, Inc. v. Image Sensing Sys., Inc.,*
No. 16-cv-01848-CMA-KMT, 2016 WL 9344080 (D. Colo. Oct. 14, 2016) ............13, 17–18

*Compass Bank v. Katz,*
287 F.R.D. 392 (S.D. Tex. 2012)........................................................................................8, 10

*Dietz v. Quality Loan Serv. Corp. of Washington,*
No. C13-5948 RJB, 2014 WL 4546953 (W.D. Wash. Sept. 12, 2014)..................................19

*Elobied v. Baylock,*
299 F.R.D. 105 (E.D. Pa. 2014)............................................................................................10

*Fraserside IP LLC v. Letyagin,*
280 F.R.D. 630 (N.D. Iowa 2012) ........................................................................................15

*Hunt v. Nationstar Mortgage, LLC,*
782 F. App'x 762 (11th Cir. 2019) ........................................................................................19

*In re LDK Solar Sec. Litig.,*
No. C 07–05182 WHA, 2008 WL 2415186 (N.D. Cal. June 12, 2008) ................................15

*Int'l. Designs Corp., LLC v. Qingdao SeaForest Hair Prods., Co., Ltd.,*
No. 17-60431-CIV-MORENO, 2018 WL 2364297 (S.D. Fla. Jan. 4, 2018)...............7, 14, 17

*Ingrid & Isabel, LLC v. Bentibo,*
No. 18-cv-01856-JCS, 2019 WL 2517524 (N.D. Cal. May 10, 2019) ..................................16

*James Avery Craftsman, Inc. v. Sam Moon Trading Enters., Ltd.,*
No. SA-16-cv-00463-OLG, 2018 WL 4688778 (W.D. Tex. July 5, 2018)......................11–12

*Joshi Techs. Int'l, Inc. v. Consorcio Pegaso,*
No. 17–CV–359–GKF–FHM, 2017 WL 3151282 (N.D. Okla. July 25, 2017) .....................14

*Keck v. Alibaba.com, Inc.,*
330 F.R.D. 255 (N.D. Cal. 2018)..........................................................................................17

ii

*Lexmark Int'l., Inc. v. Ink Techs. Printer Supplies, LLC*,
   295 F.R.D. 259 (S.D. Ohio 2013) ........................................................15

*Luxottica Group S.p.A. v. P'ships and Unincorporated Ass'ns Identified on Schedule "A,"*
   391 F. Supp. 3d 816 (N.D. Ill. 2019) ..............................................8–10

*Midmark Corp. v. Janak Healthcare Private Ltd.*,
   No. 3:14–cv–088, 2014 WL 1764704 (S.D. Ohio May 1, 2014) ...........................6, 11, 14, 19

*Morningstar v. Dejun*,
   No. CV 11–00655 DDP (VBKx), 2013 WL 502474, (C.D. Cal. Feb. 8, 2013) ...................16

*Rio Properties, Inc. v. Rio Int'l. Interlink*,
   284 F.3d 1007 (9th Cir. 2002) ....................................................6, 15

*Troxell v. Fedders of N. Am., Inc.*,
   160 F.3d 381 (7th Cir. 1998) .........................................................19

*U.S. Aviation Underwriters, Inc. v. Nabtesco Corp.*,
   No. C07–1221RSL, 2007 WL 3012612 (W.D. Wash. Oct. 11, 2007) ....................16

*Ulysses GmbH & Co. KG v. UlyssesWindows.com*,
   No. 2:18-cv-00202-RAJ, 2019 WL 3413211 (W.D. Wash. July 29, 2019) ..............13, 17

*Volkswagenwerk Aktiengesellschaft v. Schlunk*,
   486 U.S. 694 (1988) ....................................................6, 8–9, 13

*Water Splash, Inc. v. Menon*,
   137 S.Ct. 1504 (2017) ....................................................6, 8–9

*Webroot Inc. v. Singh*,
   No. 18-cv-01909-STV, 2018 WL 4777413 (D. Colo. Oct. 3, 2018) ...................15

**Other Authorities**

Fed. R. Civ. P. 4(f) ........................................................... *passim*

Fed. R. Civ. P. 4(g) ...............................................................1

Fed. R. Civ. P. 12.................................................................2

Convention on the Service Abroad of Judicial and Extrajudicial Documents in
   Civil and Commercial Matters, Nov. 15, 1965 (Hague Service Convention),
   20 U.S.T. 361 ........................................................... *passim*

Hague Conference on Private International Law, Status Table,
   https://www.hcch.net/en/instruments/conventions/status-table/?cid=17 (last
   visited Nov. 21, 2019)..........................................................7–8

Active/50946727.2

1.     Defendants Jun Li and Mingsu Li (together, "Mr. and Mrs. Li"), through their undersigned counsel specially appearing for the limited purposes stated herein, respectfully submit this special objection (the "Special Objection") to the Motion for Order Authorizing Alternative Forms of Service (the "Motion") that the Debtor, Frictionless World, LLC (the "Debtor"), filed in this action (the "Adversary Proceeding") on November 11, 2019.  *See* Docket No. 25.  In its Motion, the Debtor seeks permission, under Fed. R. Civ. P. 4(f),[1] to serve its October 9, 2019 complaint in the Adversary Proceeding on Mr. and Mrs. Li via email and through counsel.  *See* Docket No. 1.  For the reasons set forth below, the Debtor's Motion is governed by and violates the Hague Convention and, therefore, should be denied without prejudice.

### NOTICE OF SPECIAL APPEARANCE AND RESERVATION OF RIGHTS

2.     Mr. and Mrs. Li have entered a special appearance in this case, through their undersigned counsel, for the sole purposes of filing and prosecuting:  (a) this Special Objection to the Debtor's Motion; and (b) their jury demand and motion to withdraw the reference of this Adversary Proceeding and return the Adversary Proceeding to the District Court, which is being filed simultaneously herewith (together, the "Special Documents"), to avoid a potential waiver of their ability to assert their rights and obtain the relief set forth in the Special Documents.

3.     In filing the Special Documents, Mr. and Mrs. Li expressly reserve any and all defenses that may be available to them, including, but not limited to, the right to have the claims against them decided by an Article III judge, lack of service of process, lack of personal or subject matter jurisdiction, *forum non conveniens*, and any other rights, defenses, or arguments available to

---

[1] Although the Debtor describes the Motion as being brought under Fed. Civ. P. 4(g), *see* Motion, at 1, that rule pertains only to service on minors and incompetent persons, and is therefore inapplicable here.  Rule 4(f) is the only rule governing service of process relevant to the Motion.

them under Fed. R. Civ. P. 12 or other applicable law.  Nothing in this Special Objection or the other Special Documents shall constitute or be construed as a waiver of any such rights, defenses, or arguments that may be available to Mr. and Mrs. Li.

## PRELIMINARY STATEMENT

4.      In mid-October 2019, shortly after filing this action, the Debtor's counsel asked the undersigned to accept service on behalf of all Defendants:  (a) Mr. and Mrs. Li, on the one hand; and (b) the other four defendants – Frictionless, LLC, Changzhou Inter Universal Machine & Equipment Co., Ltd., Changzhou Zhong Lian Investment Co., Ltd., and Li Zhixiang (collectively, the "Arbitration Defendants") – on the other hand.  The undersigned counsel at K&L Gates LLP has been representing the Arbitration Defendants in a pre-petition arbitration against the Debtor since at least May 2019.

5.      In response to that request, the undersigned counsel accepted service on behalf of the Arbitration Defendants and advised that "[w]e do not currently represent [Mr. and Mrs. Li], so we will have to revisit those two a bit later . . . ."  *See* Motion, Ex. 9.

6.      The Debtor's counsel never followed up on service with respect to Mr. and Mrs. Li.  Instead, the Debtor filed the Motion.

7.      After the Motion was filed, Mr. and Mrs. Li – both of whom are Chinese nationals and residents (Motion, ¶ 6) – for the first time retained the undersigned counsel to represent them individually, for the purpose of filing the Special Documents, including this Special Objection.

8.      As set forth below, the Motion is simply wrong on the law and should be denied for two main reasons.

9.      *First*, and contrary to the Debtor's claim, there is an "international legal prohibition" that bars the Debtor from "serving [Mr. and Mrs. Li] via their personal email addresses" here.  Motion, p. 10.  Specifically, both the United States and China are parties to the

2

Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361 (the "Hague Convention"). China has objected to any efforts to serve process by "postal channels" under Article 10 of the Hague Convention, thereby precluding service of process by mail on Chinese citizens. As multiple courts have held, this objection further precludes any effort to serve Chinese nationals by email under the Hague Convention. *See infra*, ¶¶ 29–40. Accordingly, the Hague Convention – which is a Senate-ratified treaty and thus federal law – bars the Debtor's requested relief here. For this reason alone, the Motion should be denied.

10.     *Second*, and in any event, the Debtor has not shown a need for alternative service under Fed. R. Civ. P. 4(f)(3). As the Debtor's own case law makes clear, U.S. courts generally approve email service on a defendant only where the plaintiff has shown that some other factor – such as an inability to locate the defendant, an inability to serve through the Hague Convention, or the defendant actually evading service – is present. But none of those circumstances is present here. Indeed, the undersigned counsel has been unable to find a single case permitting email service on individuals located abroad where, as here, the Hague Convention applies and the plaintiff has made no effort whatsoever to effect service through the Hague Convention. *See infra*, ¶¶ 41–52. Simply put, the Debtor's requested relief is unprecedented, unlawful, and unwarranted under Rule 4(f)(3). For this reason, too, the Debtor's Motion should be denied without prejudice.

## BACKGROUND FACTS

11.     The history of the arbitration between the Debtor and the Arbitration Defendants is set forth in the Arbitration Defendants' separate filings in this Adversary Proceeding and the Debtor's bankruptcy case seeking to:  (a) compel the Debtor to arbitrate; (b) dismiss, or stay, this Adversary Proceeding pending arbitration; and (c) lift the Bankruptcy Code's automatic stay to allow the Arbitration Defendants to proceed with their pending arbitration against the Debtor. *See*

3

Docket Nos. 19–23.  Those facts will not be repeated herein.  Nor will the Debtor's *ad hominem* attacks on Mr. and Mrs. Li – or the Debtor's various misstatements and inaccuracies in its Motion – be addressed here, as they are ultimately irrelevant to the black-letter law that dictates denial of the Motion.  Instead, the handful of facts relevant to the Motion are as follows:

12.     The Debtor is a Colorado limited liability company.  *See* Docket No. 1, ¶ 1.

13.     Both Mr. and Mrs. Li are individuals residing in China.  *See* Motion, ¶ 6.

14.     The Debtor initiated this Adversary Proceeding against Mr. and Mrs. Li, as well as the Arbitration Defendants, on October 9, 2019.  *See* Docket No. 1.

15.     Prior to that time, Mr. and Mrs. Li had not been named parties in any dispute with the Debtor.  Instead, Mr. and Mrs. Li were only involved by virtue of their roles as officers of one or more of the entities that are Arbitration Defendants.

16.     On October 17, 2019, the undersigned counsel accepted service of the Debtor's complaint in this Adversary Proceeding on behalf of the Arbitration Defendants, but advised that the undersigned did not represent either Mr. or Mrs. Li individually at that time.

17.     Rather than follow up with the undersigned – or otherwise attempt in any fashion to serve Mr. and Mrs. Li – the Debtor simply filed its Motion on November 11, 2019, seeking an Order permitting email service on Mr. and Mrs. Li, or the undersigned, pursuant to Rule 4(f)(3).

18.     After the Motion was filed, Mr. and Mrs. Li retained the undersigned counsel for the first time to make a special appearance on their behalf in order to file the Special Documents.

19.     Contemporaneously with the filing of this Special Objection, the undersigned counsel has provided the Debtor's counsel with the verified physical addresses in China for Mr. and Mrs. Li, respectively.  For privacy reasons, Mr. and Mrs. Li are not publishing their addresses in this publicly-filed document.

## ARGUMENT

**I.**    **The Hague Convention Governs the Debtor's Motion.**

20.    Fed. R. Civ. P. 4(f) governs service of process on individuals, like Mr. and Mrs. Li, located in a foreign country. Rule 4(f) provides that service may be made on such a defendant:

> (1) by any internationally agreed means of service that is reasonably calculated to give notice, **such as those authorized by the Hague Convention . . .**;
>
> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:
>
> > (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
> >
> > (B) as the foreign authority directs . . . ; or
> >
> > (C) unless prohibited by the foreign country's law, by:
> >
> > > (i) delivery a copy of the summons and of the complaint to the individual personally; or
> > >
> > > (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or
>
> (3) by other means **not prohibited by international agreement**, as the court orders.

Fed. R. Civ. P. 4(f) (emphasis added).

21.    As the Advisory Committee notes to Rule 4(f) make clear: "Use of the [Hague] Convention procedures, when available, **is mandatory** if documents must be transmitted abroad to effect service." Fed. R. Civ. P. 4(f) advisory committee's notes to 1993 Amendment (citing *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 706 (1988) (noting that voluntary use of the Hague Convention's service procedures may be desirable even when service could constitutionally be effected in another manner)) (emphasis added).

Active/50946727.2

22.     The Hague Convention "requires each [signatory country] to establish a central authority to receive requests for service of documents from other countries." *Water Splash, Inc. v. Menon*, 137 S.Ct. 1504, 1508 (2017) (citing *Schlunk*, 486 U.S. at 698).  In the event that a foreign country's Central Authority does not act on a service request within six months, Article 15 of the Hague Convention permits alternative methods of service.  *See, e.g., Midmark Corp. v. Janak Healthcare Private Ltd.*, No. 3:14–cv–088, 2014 WL 1764704, at *1 (S.D. Ohio May 1, 2014); *see also* Fed. R. Civ. P. 4(f) advisory committee's notes to 1993 Amendment.  As the Advisory Committee notes make clear, "[i]n such cases, resort may be had to . . . subdivision (f)(3)."  Fed. R. Civ. P. 4(f) advisory committee's notes to 1993 Amendment.

23.     Taken together, these Federal Rules provide that service may be made under Fed. R. Civ. P. 4(f)(1) or 4(f)(2), and under 4(f)(3) if doing so is "not prohibited by international agreement."  However, as the Ninth Circuit noted in a case relied on heavily by the Debtor, "[a] federal court would be prohibited from issuing a Rule 4(f)(3) order in contravention of an international agreement, **including the Hague Convention referenced in Rule 4(f)(1).**"  *Rio Properties, Inc. v. Rio Int'l. Interlink*, 284 F.3d 1007, 1015 n.4 (9th Cir. 2002) (noting that the Hague Convention did not apply in that case because the defendant was located in Costa Rica, which is not a signatory to the Convention) (emphasis added).

24.     As set forth below, the Hague Convention applies here and precludes service on Mr. and Mrs. Li in China via email.  In addition, the Debtor's Motion still fails because federal courts have universally held that a plaintiff like the Debtor must show far more cause than mere speed and convenience to justify service by email under Rule 4(f)(3), particularly in the absence of any actual efforts to serve process through traditional means.

6

## II. **The Debtor's Requested Relief is Barred by the Hague Convention, Which Prohibits Service on Chinese Nationals Like Mr. and Mrs. Li via Email.**

25.     Initially, the Motion should be denied because the Debtor's requested relief is barred by the Hague Convention, which prohibits service on Chinese nationals like Mr. and Mrs. Li via email.  Because there is, in fact, an "international legal prohibition" that bars the Debtor's requested relief, alternative service via Rule 4(f)(3) cannot be allowed.  Motion, p. 10.

### A. The Hague Convention Applies to the Debtor's Efforts to Serve Mr. and Mrs. Li in China

26.     Both China and the United States are signatories to the Hague Convention.  *See, e.g.*, Hague Conference on Private International Law, Status Table, https://www.hcch.net/en/instruments/conventions/status-table/?cid=17 (last visited Nov. 21, 2019); *see also Int'l. Designs Corp., LLC v. Qingdao SeaForest Hair Prods., Co., Ltd.*, No. 17-60431-CIV-MORENO, 2018 WL 2364297, at *2 (S.D. Fla. Jan. 4, 2018) (same).

27.     By its terms, the Hague Convention applies here unless "the address of the person to be served with the document is not known."  Art. 1, 20 U.S.T. at 362.

28.     Here, the undersigned counsel has contemporaneously provided the Debtor's counsel with the verified physical addresses for Mr. and Mrs. Li in China via separate correspondence.  Accordingly, the Debtor cannot dispute that the Hague Convention applies to its efforts to serve Mr. and Mrs. Li.

### B. The Hague Convention, As Adopted By China, Bars Service on Chinese Nationals Like Mr. and Mrs. Li Via Email

29.     "As a ratified treaty, compliance with the Hague Convention is mandatory in all cases to which it applies."  *See, e.g., Compass Bank v. Katz*, 287 F.R.D. 392, 394 (S.D. Tex. 2012) (citing *Schlunk*, 486 U.S. at 705).

30.     Article 10 of the Hague Convention permits service "by postal channels, directly to persons abroad," along with other alternative methods of service, provided that the "State of destination does not object" to those methods of service.  *Water Splash*, 137 S.Ct. at 1508.

31.     Here, China has objected to all forms of alternative service available under Article 10 of the Hague Convention.  *See, e.g.*, Hague Conference on Private International Law, Status Table, https://www.hcch.net/en/instruments/conventions/status-table/?cid=17 (last visited Nov. 21, 2019); *see also Luxottica Group S.p.A. v. P'ships and Unincorporated Ass'ns Identified on Schedule "A,"* 391 F. Supp. 3d 816, 827 (N.D. Ill. 2019) ("China opposes the service of documents in the territory of the People's Republic of China by the methods provided by Article 10 of the Convention.") (internal quotation omitted).

32.     Accordingly, the Debtor's Motion for alternative service pursuant to Rule 4(f)(3) can only be granted if the Hague Convention permits email service on Chinese nationals, notwithstanding China's objection to Article 10.  But a long line of thorough, well-reasoned decisions from courts nationwide makes clear that such email service is not permissible under the Hague Convention where a foreign country, like China, has objected to Article 10 thereof.

33.     The Northern District of Illinois' decision earlier this year in *Luxottica Group* is particularly instructive.  *Luxottica Group S.p.A.*, 391 F. Supp. 3d at 816.  There, the District Court initially granted the plaintiff's *ex parte* request to serve the defendants – various Chinese entities and individuals allegedly selling counterfeit goods online – via email pursuant to Rule 4(f)(3).  *Id.* at 820.  But, after an exhaustive analysis, the District Court subsequently reversed its decision, holding that its initial ruling "does not withstand scrutiny under full adversary briefing."  *Id.* at 827.  The *Luxottica Group* court reached this conclusion as follows:

a.  *First*, the court found that the Hague Convention did, in fact, apply, rejecting plaintiffs' argument that the defendants' addresses were unknown.  *Id.* at 822–24 (holding that "courts require specific proof of a 'reasonable investigation' of [a defendant's] address's validity before finding it is 'unknown'" under the Hague Convention, and finding that plaintiffs had identified "no [such] evidence").

b.  *Second,* the court found that the mere fact that serving defendants in China pursuant to the Hague Convention may take months or years does not, without more, render the Convention inapplicable.  *See id.* at 824 ("Article 15 of the [Hague] Convention provides remedies when a nation's central authority takes more than six months to serve process.  Plaintiffs do not explain why this remedy is insufficient.")

c.  *Third,* and critically, the court examined the significance of China's objection to Article 10 in light of binding precedent.  Citing the Supreme Court's decisions in *Schlunk* and *Water Splash* – which both held that the Hague Convention "specifies certain approved methods of service **and pre-empts inconsistent methods of service wherever it applies**" – the court found that "the drafters of the Hague [] Convention intended to prohibit a method of service not mentioned in its text." *Luxottica Group*, 391 F. Supp. 3d at 825 (citing *Schlunk*, 486 U.S. at 699, and *Water Splash*, 137 S.Ct. at 1507) (emphasis added).

d.  *Fourth,* and finally, applying the Supreme Court's decisions in *Schlunk* and *Water Splash* to the issue at hand – whether China's objection to service by postal channels under Article 10(a) of the Hague Convention necessarily precludes service by email in China as well – the court ultimately concluded that "China's objections [to Article 10] likewise preclude email service." *Luxottica Group*, 391 F. Supp. 3d

at 826–27 (citing cases finding that the objections of Germany, Switzerland, and Mexico to Article 10 of the Hague Convention similarly preclude email service in those countries).[2]

34.     To be sure, the *Luxottica Group* court recognized that some cases have found that email service is permissible even where a foreign country has objected to Article 10(a) of the Hague Convention.  *See id.* at 827.  But it was persuaded that, "[b]ecause email would bypass the methods of service the Hague Convention authorizes, the Convention preempts it as inconsistent," consistent with the Supreme Court's decisions in *Schlunk* and *Water Splash*.  *Id.*  This decision is correct as a matter of both common sense and law, for several reasons:

35.     *First*, the Hague Convention – along with Article 10 thereof permitting service "by postal channels" – was drafted in 1965, long before email became prevalent.  The Hague Convention's drafters thus did not consider whether email falls within the Convention's definition of "postal channels" or whether, instead, email deserves its own category altogether.  But, given that, as the name implies, email is simply "electronic mail," it is certainly reasonable to liken email to "postal channels" for purposes of interpreting the Hague Convention.  Indeed, that is exactly what the Southern District of Texas did in a case relied upon by the *Luxottica Group* court.  *See Compass Bank*, 287 F.R.D. at 396–97 (holding that, by objecting to service under Article 10, Mexico "**object[ed] to all alternative channels of service**," including email, and had thus established "service through Mexico's Central Authority [as] **the exclusive method of service** of process on parties in Mexico under the Hague Convention") (emphasis added).

---

[2] These cases are:  *Elobied v. Baylock*, 299 F.R.D. 105, 108 (E.D. Pa. 2014) (Switzerland); *Agha v. Jacobs*, No. C 07-1800 RS, 2008 WL 2051061, at **1–2 (N.D. Cal. May 13, 2008) (Germany); and *Compass Bank*, 287 F.R.D. at 396-97 (Mexico).

36.     *Second*, and as discussed further below, most of the cases authorizing email service on defendants located in a Hague Convention signatory country have done so in vastly different circumstances than those present here.  For example, as the Western District of Texas found, most courts that have authorized email service in countries that have objected to Article 10 of the Hague Convention only did so "*after*" the plaintiff tried, and failed, to serve the defendant through the country's central authority as required under the Hague Convention.  *James Avery Craftsman, Inc. v. Sam Moon Trading Enters., Ltd.*, No. SA-16-cv-00463-OLG, 2018 WL 4688778, at **6–8 (W.D. Tex. July 5, 2018) (collecting cases from 2013-2016 attempting service in countries ranging from Turkey to China to India to Russia and concluding, like the *Luxottica Group* court, that email service in China is precluded under the Hague Convention) (emphasis in original).[3]

37.     This is in accord with prior, thorough decisions on this issue from several courts, similarly finding that email service on a defendant in Hague Convention signatory country is not appropriate simply as an alternative to other forms of Hague Convention service.  *See, e.g., Midmark Corp.*, 2014 WL 1764704, at *2–3 (S.D. Ohio May 1, 2014) (rejecting plaintiff's request for email service on a defendant in India before "allowing the Central Authority of India an opportunity to serve Defendants," distinguishing the *Lexmark* case relied upon by the Debtor).

38.     In concluding its thorough analysis on this issue, the *James Avery* court canvassed the law and encapsulated it, correctly, as follows:

---

[3] Indeed, in several cases cited by the Western District of Texas, email service was authorized even though the defendant's address could not be located, thus suggesting that the Hague Convention was completely inapplicable.  *See James Avery Craftsman, Inc.*, 2018 WL 4688778, at *6 (citing *Bazarian Int'l Fin. Assocs., LLC v. Desarroloos Aerohotelco, C.A.*, 168 F. Supp. 3d 1, 13–16 (D.D.C. 2016) and *Popular Enters., LLC V. Webcam Media Group, Inc.*, 225 F.R.D. 560, 562 (E.D. Tenn. 2004), both permitting email service *"after"* Hague Convention service failed and plaintiff was unable to locate defendant's address) (emphasis in original); *supra*, ¶ 27 (noting that, under Article 1 of the Hague Convention, the Convention does not apply where the defendant's address "is not known").

> In its Show Cause Order, the Court asked Plaintiff to identify, if able, *any case* that permitted international email service in which (i) the Hague Convention applied, (ii) the nation in which service was effected had objected to Article 10, (iii) defendant's international address was identified and verified, and (iv) plaintiff made no attempt to comply with service through the nation's "Central Authority" or demonstrated that such service was not a realistic option . . . . **Plaintiff's Response did not do so**.

*James Avery Craftsman, Inc.*, 2018 WL 4688778, at **6–8 (italicized emphasis in original; bold emphasis added).

39.     Just as the Western District of Texas found in *James Avery*, the undersigned counsel is similarly aware of no case permitting service by email under Rule 4(f)(3) where, as here:  (a) the Hague Convention applies; (b) the foreign nation, China, has objected to all alternative forms of service under Article 10; (c) the defendants' verified physical addresses have been provided directly to the plaintiff; and (d) the action has been pending for just over a month, with no effort whatsoever by the plaintiff (here, the Debtor) to attempt service through China's Central Authority under the Hague Convention.

40.     Simply put, the Debtor's requested relief under these circumstances is effectively unprecedented and is contrary to federal law in the form of a ratified international treaty, the Hague Convention.  The Motion should therefore be denied, without prejudice.  The Debtor should proceed with service on Mr. and Mrs. Li through China's Central Authority, as the Hague Convention requires, unless and until the Debtor shows that such service is not possible, violates the Hague Convention's limits on the time for accomplishing such service, or otherwise runs afoul of applicable law.

12

**III.** **In Addition to the Hague Convention's Prohibition on Service by Email on a Chinese National, the Debtor's Complete Failure to Attempt Service by Conventional Means Precludes Alternative Service Under Rule 4(f).**

41.     In addition to the Hague Convention's bar against email service on Mr. and Mrs. Li, the Motion should also be denied because the Debtor has not met its burden of showing that alternative service under Rule 4(f)(3) is warranted here.  While Rule 4(f)(3) "stands independently of" Rules 4(f)(1) and 4(f)(2), courts in this District and nationwide generally require plaintiffs to "show that [they] made reasonable efforts to serve the defendant and that the court's intervention will avoid further unduly burdensome or futile efforts at service" before authorizing alternative service under Rule 4(f)(3).  *See, e.g., Blumedia, Inc. v. Sordid Ones BV*, No. 10–cv–01158–MSK–KLM, 2011 WL 42296, at *4 (D. Colo. Jan. 6, 2011) (requiring plaintiff to first attempt service through the Hague Convention before seeking alternative service by email under Rule 4(f)(3)); *Clancy Systems Int'l, Inc. v. Image Sensing Sys., Inc.*, No. 16-cv-01848-CMA-KMT, 2016 WL 9344080, at **3–4 (D. Colo. Oct. 14, 2016) (denying Rule 4(f)(3) motion where plaintiff never tried to serve via the Hague Convention); *Ulysses GmbH & Co. KG v. UlyssesWindows.com*, No. 2:18-cv-00202-RAJ, 2019 WL 3413211, at *3 (W.D. Wash. July 29, 2019) (denying Rule 4(f)(3) motion where plaintiff had identified physical addresses for three defendants and there was no evidence defendants were attempting to evade service, rejecting plaintiff's argument that service pursuant to international treaty would be "problematic" or "fruitless").

42.     This requirement is not some empty gesture designed to inconvenience plaintiffs without any countervailing benefit.  As the Supreme Court has noted, "parties that comply with the [Hague] Convention ultimately may find it easier to enforce their judgments abroad." *Schlunk*, 486 U.S. at 706.  And as the Northern District of Oklahoma recently held in analyzing this very issue:

> [B]efore granting an (f)(3) request, the court may require that plaintiff attempt to conventionally serve defendants pursuant to (f)(1) or (f)(2). . . . **That approach comports with longstanding judicial practice to minimize potential conflict between domestic and international law**. . . .
>
> **And it is supported by the Advisory Committee Notes as well.** The note to subsection (f)(1) states that 'the methods of service under an applicable treaty *shall* be employed if available and [] the treaty so requires.' . . . Rule 4(f)(3) was expressly intended as a catchall to authorize 'other methods of service not prohibited by international agreements' – but only where 'consistent with due process and designed to minimize offense to foreign law.'
>
> **[Plaintiff]'s approach here – to request service by email without first attempting service under foreign law – does not comport with that guidance. . . . [Plaintiff]** should endeavor to follow the laws of service for [the foreign countries at issue] before seeking leave to effectuate alternative service under subsection (f)(3). . . .
>
> **Simply put, a liberal construction of Rule 4 cannot be utilized as a substitute for the plain legal requirements as to the manner in which service of process may be had.**

*Joshi Techs. Int'l, Inc. v. Consorcio Pegaso*, No. 17–CV–359–GKF–FHM, 2017 WL 3151282, at *2–3 (N.D. Okla. July 25, 2017) (bold emphasis added; italicized emphasis in original); *see also Midmark Corp.*, 2014 WL 1764704, at *2 ("[E]ven if other methods of obtaining service of process are technically allowed, principles of comity encourage the court to insist, as a matter of discretion, that a plaintiff attempt to follow foreign law in its efforts to secure service of process . . . .").

43.     These competing policy concerns are precisely why federal courts have consistently authorized alternative service by email "only where the defendant's foreign address is unknown; the defendant has successfully evaded service; failure to permit alternate service will result in unduly long delays in litigation; or where attempted Hague Convention service has failed." *See Int'l Designs Corp., LLC*, 2018 WL 2364297, at *3–5 (declining "to authorize alternate service at this time, as Plaintiffs have not yet attempted to serve [defendant] through China's Central Authority as contemplated by the Hague Convention").

14

44.     Indeed, **every single one** of the cases relied upon by the Debtor in its Motion falls into one or more of these categories:

- _Lexmark Int'l., Inc. v. Ink Techs. Printer Supplies, LLC_:  Court authorized email service on Chinese entities in light of:  (a) plaintiff's "difficulties . . . attempting to locate all of the Defendants"; (b) plaintiff's demonstration "that other business entities have evaded enforcement efforts by effectively disappearing"; and (c) the fact that the "case has been pending for approximately three years."  295 F.R.D. 259, 262 (S.D. Ohio 2013).

- _Rio Properties, Inc. v. Rio Int'l Interlink_:  Court authorized email service in Costa Rica where:  (a) the Hague Convention did not apply; (b) defendant had "no easily discoverable street address"; (c) defendant "structured its business such that it could be contacted _only_ via its email address"; and (d) plaintiff had made numerous good faith attempts to serve the defendant before seeking permission to serve via email. 284 F.3d 1007, 1014–19 (9th Cir. 2002) (Emphasis in original).

- _Fraserside IP LLC v. Letyagin_:  Court authorized email service where defendants "use false addresses to evade liability for their illegal activities and to evade service of process."  280 F.R.D. 630, 630–31 (N.D. Iowa 2012).

- _In re LDK Solar Sec. Litig._:  Court authorized service on Chinese individuals – officers of a parent company traded on the New York Stock Exchange – through the parent company's California office where "plaintiffs have shown the difficulty of serving the unserved defendants abroad" and defendants' counsel had said that "it might be impossible to serve some of the unserved defendants."  No. C 07–05182 WHA, 2008 WL 2415186, at **3–4 (N.D. Cal. June 12, 2008).

- _Webroot Inc. v. Singh_:  Court authorized email service on an Indian defendant after "Plaintiff [] made numerous attempts to serve Defendants by other means" including "through the "Central Authority of India" pursuant to the Hague Convention.  No. 18-cv-01909-STV, 2018 WL 4777413, at *2 (D. Colo. Oct. 3, 2018).

- _Morningstar v. Dejun_: Court authorized email service in February 2013 where "Plaintiffs initiated the process of serving the foreign defendants [in China] under the Hague Convention in May, 2011 [21 months earlier]. Plaintiffs' attempts have thus far been unsuccessful." No. CV 11–00655 DDP (VBKx), 2013 WL 502474, at *1 (C.D. Cal. Feb. 8, 2013).

- _Ingrid & Isabel, LLC v. Bentibo_: Court authorized email service in May 2019 where plaintiff's "efforts to serve[] Defendants in China under the Hague Convention," which began in May 2018, "were unsuccessful." No. 18-cv-01856-JCS, 2019 WL 2517524, at *1 (N.D. Cal. May 10, 2019).

45.     In short, all of the cases relied upon by the Debtor involved some or all of the same factors that traditionally lead courts to authorize alternative service – **none** of which is present here. The addresses for Mr. and Mrs. Li are not "unknown;" the Debtor now has their verified physical addresses. Mr. and Mrs. Li are not attempting to evade service; they have provided the Debtor with their addresses so that the Debtor may serve them properly pursuant to the Hague Convention. And there is no possible argument for undue delay here – as in _Lexmark_ and _Morningstar_, among others – because the Debtor filed its Adversary Proceeding just over a month ago, and has not even attempted to effect service through the Hague Convention.

46.     There is no support under the case law for authorizing alternative service where, as here, the plaintiff merely believes it will be easier, cheaper, or faster than normal service methods. To the contrary, courts have repeatedly held that alternative service by email is not warranted under Rule 4(f)(3) on these grounds. _See, e.g., U.S. Aviation Underwriters, Inc. v. Nabtesco Corp._, No. C07–1221RSL, 2007 WL 3012612, at *2 (W.D. Wash. Oct. 11, 2007) ("[P]laintiff's request to use Rule 4(f)(3) simply because 'it will be much faster, thus moving this case forward in an expeditious and cost-effective manner' . . . by itself is not sufficient justification for the Court to authorize service by alternative method."); _Keck v. Alibaba.com, Inc._, 330 F.R.D. 255, 259 (N.D. Cal. 2018)

(same); *Ulysses GmbH & Co. KG*, 2019 WL 3413211, at *3 (W.D. Wash. July 29, 2019) (same, rejecting request for email service where plaintiff had identified physical addresses for three defendants and there was no evidence defendants were attempting to evade service).

47.     And courts have similarly held, under the circumstances present here, that a plaintiff like the Debtor must attempt service through the Hague Convention before resorting to email service or service through counsel.  *See, e.g., Int'l Designs Corp., LLC*, 2018 WL 2364297, at *4 ("[T]he Court declines to authorize alternate service at this time, as Plaintiffs have not yet attempted to serve [defendant] through China's Central Authority as contemplated by the Hague Convention. . . . The Court is wary of circumventing the Hague Convention without Plaintiffs first attempting to comply with it, especially in light of the Advisory Committee Notes on Rule 4(f)(3)."); *Am. Express Co. v. Xiongwen Rui*, No. CV-18-01281-PHX-DWL, 2019 WL 1858101, at *3 (D. Ariz. Apr. 25, 2019) (vacating the Court's prior order authorizing alternative service on defendant via email where the defendant "has agreed to provide his Chinese address and there's no evidence [he] has evaded service" and directing service be effected through the Hague Convention).

48.     Magistrate Judge Tafoya's decision in *Clancy Sys. Int'l* is right on point.  2016 WL 9344080.  There, Clancy Systems was engaged in negotiations with U.S. counsel for TagMaster AB, a Swedish corporation, in an attempt to resolve the parties' dispute without litigation.  *Id.* at *2.  Talks broke down, however, and Clancy Systems sued.  *Id.*  TagMaster AB's U.S. counsel was not authorized to accept service, contending that Clancy Systems instead had to serve TagMaster AB pursuant to the Hague Convention.  *Id.*  While Clancy Systems acknowledged that the Hague Convention applied, it nevertheless sought leave to serve TagMaster via U.S. mail and

17

email to TagMaster AB's U.S. counsel, under Rule 4(f)(3), "due to the cost and delay inherent in service pursuant to the Hague Convention." *Id.* at 3.

49.     After full briefing, Magistrate Judge Tafoya denied the motion and ordered Clancy Systems to serve TagMaster AB through the Hague Convention.  2016 WL 9344080, at **3–4. She did so because "in almost every case" relied upon by Clancy Systems, "the plaintiff had first attempted service under the Hague Convention."  *Id.* at *4 (collecting cases).  Even though "the cost and delay resulting from service pursuant to the Hague Convention seem[ed] especially burdensome" given the existence of TagMaster AB's U.S. counsel, Clancy Systems still had to "first attempt service pursuant to the Hague Convention prior to the court granting leave for substitute service under Fed. R. Civ. P. 4(f)(3)."  *Id.*

50.     The same holds true here.  Just as in *Clancy Systems*, Mr. and Mrs. Li have retained the undersigned counsel to file the Special Documents, but they have not authorized the undersigned to accept service on their behalf.  2016 WL 9344080, at *2.  And, just as Clancy Systems refused to do before seeking substitute service under Rule 4(f)(3), the Debtor has made no effort whatsoever to attempt service under the Hague Convention here, instead claiming that the existence of U.S. counsel – and a lone Internet article asserting lengthy waits for Hague Convention service in China – are sufficient to justify alternate service.  *See* Motion, pp. 8–10. But, as Magistrate Judge Tafoya and numerous other courts have held, such concerns about "speed" and "delay," standing alone, are not enough to justify alternative service under Rule 4(f)(3).  *See Clancy Sys. Int'l*, 2016 WL 9344080, at **3–4; *see also supra*, ¶ 49.

51.     In sum, the only basis that the Debtor has proffered for alternative service here is that the undersigned are present and have not agreed to accept service on behalf of Mr. or Mr. Li. But this is not "evasion" or "intentional avoidance of service" on the part of Mr. and Mrs. Li, as

18

the Debtor claims.  Motion, p. 2, ¶ 28, and p. 10.  Far from it, Mr. and Mrs. Li have a right to service of process under the Hague Convention as a matter of international and federal law.  And it is black letter law that they are not obligated to waive that right simply on the Debtor's say-so. *See, e.g., Dietz v. Quality Loan Serv. Corp. of Washington*, No. C13-5948 RJB, 2014 WL 4546953, at *1 (W.D. Wash. Sept. 12, 2014) ("A defendant is not required to accept a request for waiver of service."); *Troxell v. Fedders of N. Am., Inc.*, 160 F.3d 381, 383 (7th Cir. 1998) ("Nothing in Rule 4 obliges a defendant to execute a waiver of service. . . . . [A] defendant . . . that wants to stand on formalities, for whatever reason, is entitled to do so.").

52.     Instead, Mr. and Mrs. Li "are merely standing on their right to formal service of process" pursuant to the Hague Convention, as they are entitled to do.  *Midmark Corp.*, 2014 WL 1764704, at *3.  And, because the Debtor has not shown any basis for justifying alternative service – especially considering it has not even tried to effect formal service as required under the Hague Convention – its Motion should be denied, without prejudice.[4]

---

[4] The Debtor's repeated statement that Mr. and Mrs. Li have notice of the Adversary Proceeding – *see, e.g.,* Motion, pp. 10-11 – is irrelevant here.  As the Eleventh Circuit recently held:

> '[B]efore a court may exercise personal jurisdiction over a defendant, **there must be more than notice to the defendant** . . . [T]here must be authorization of service of summons on the defendant.' *Omni Capital Intern., Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987).  An individual or entity 'is not obligated to engage in litigation unless [officially] notified of the action, and brought under a court's authority, by formal process.' *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999).  **Even where a defendant has actual notice of the filing of a suit, service of process is ineffective where it does not comply with the rules of service**.

*Hunt v. Nationstar Mortgage, LLC*, 782 F. App'x 762, 764 (11th Cir. 2019) (emphasis added).

## CONCLUSION

WHEREFORE, Mr. and Mrs. Li respectfully request that the Court deny the Debtor's Motion and direct the Debtor to attempt service on Mr. and Mrs. Li through the Hague Convention, as the Debtor is required to do under applicable international and federal law.

DATED: November 25, 2019.

SHERMAN & HOWARD L.L.C.

*s/ Eric E. Johnson*
Peter A. Cal
Eric E. Johnson
633 Seventeenth Street, Suite 3000
Denver, Colorado 80202
Telephone: (303) 297-2900
Facsimile: (303) 298-0940
   E-mail: pcal@shermanhoward.com
        ejohnson@shermanhoward.com

K&L GATES LLP

*s/ Brian D. Koosed*
Brian D. Koosed
Robert T. Honeywell
1601 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 778-9204
Facsimile: (202) 778-9100
   E-mail: Brian.Koosed@klgates.com
        Robert.Honeywell@klgates.com

**Attorneys for Mingsu Li, a/k/a Serena Li; and Jun Li, a/k/a Frank Li**

Active/50946727.2

## CERTIFICATE OF SERVICE

I hereby certify that on November 25, 2019, I electronically filed the foregoing **SPECIAL OBJECTION TO THE DEBTOR'S MOTION AUTHORIZING ALTERNATIVE FORMS OF SERVICE ON DEFENDANTS MINGSU LI AND JUN LI** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Aaron J. Conrardy, Esq.
David Wadsworth, Esq.
David Warner, Esq.
aconrardy@wgwc-law.com
dwadsworth@wgwc-law.com
dwarner@wgwc-law.com

Thomas P. Howard
Olayinka L. Hamza
thoward@thowardlaw.com
ohamza@thowardlaw.com

Kevin S. Neiman, Esq.
kevin@ksnpc.com

Debra Piazza
dpiazza@montgomerylittle.com

Nathan G. Osborn, Esq.
nosborn@montgomerylittle.com

Alan K. Motes, Esq.
Alan.Motes@usdoj.gov

U.S. Trustee
USTPRegion19.DV.ECF@usdoj.gov

*s/ Roberta Neal*