IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | Case No. 19-18459 MER |
| | ) | |
| Frictionless World, LLC | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| Frictionless World, LLC, | ) | |
| | ) | Adversary Proceeding No. 19-01282 MER |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Frictionless, LLC; Changzhou Inter Universal | ) | |
| Machine & Equipment Co., Ltd.; Li Zhixiang; | ) | |
| Changzhou Zhong Lian Investment Co., Ltd.; | ) | |
| Serena Li; and Frank Li, | ) | |
| | ) | |
| Defendants. | ) | |

---

**ARBITRATION PARTICIPANTS' RESPONSE TO THE MOTION OF
THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
TO INTERVENE AS PLAINTIFF**

---

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ..............................................................................................................................5

    I.      The Committee Cannot Bear its Burden of Proving It is Entitled to Intervention. .........................................................................................................5

    II.    Under Controlling Tenth Circuit Precedent, the Committee Does Not Have an Unconditional Right to Intervene Under Rule 24(a)(1) and 11 U.S.C. § 1109(b). ......................................................................................................6

    III.   The Committee Lacks Standing to Pursue Claims On Behalf of the Debtor Because the Debtor is Already Pursuing the Same Claims. ....................................8

    IV.   The Committee Cannot Satisfy the Standard for Intervention as of Right Under Rule 24(a)(2). ..............................................................................................11

    V.    The Committee Should Not Be Granted Permissive Intervention Under Rule 24(b). ............................................................................................................18

    VI.   The Motion Should Further Be Denied Because It is Deficient Under Rule 24(c). ..................................................................................................................19

    VII.  Because the Committee Seeks to Assert in the Adversary Proceeding Only the Debtor's Rights and Claims that Must be Arbitrated, the Committee's Intervention is Subject to the Debtor's Arbitration Agreement.............................19

    VIII. If the Court Were Inclined to Grant Intervention, the Court Should Join Other Courts in Narrowly Tailoring its Scope. ......................................................21

CONCLUSION..........................................................................................................................23

## TABLE OF AUTHORITIES

**Cases**                                                                          **Page(s)**

*25th Street Associated, LLC v. Union Square Assocs., LLC (In re Union Square Assocs., LLC)*, 392 B.R. 474 (Bankr. D. Utah 2008)................................................16

*Assured Guaranty Corp. v. Fin. Oversight & Mgmt. Bd. For Puerto Rico (In re Fin. Oversight & Mgmt. Bd. for Puerto Rico)*, 872 F.3d 57 (1st Cir. 2017) .................7–8, 22

*Big Rivers Elec. Corp. v. Thorpe*, 195 B.R. 664 (W.D. Ky. 1996)..................................................7

*Bottoms v. Dresser Indus., Inc.*, 797 F.2d 869 (10th Cir. 1986)........................................14, 16–17

*Brazell v. Waite*, 525 F. App'x 878 (10th Cir. 2013)....................................................21

*Canadian Pac. Forest Prods. Ltd. v. J.D. Irving, Ltd. (In re Gibson Grp., Inc.)*, 66 F.3d 1436 (6th Cir. 1995) ....................................................................10

*Catholic Bishop of N. Alaska v. Cont'l Ins. Co. (In re Catholic Bishop of N. Alaska)*, Case No. F08–90019–DMD, 2009 WL 8446700 (Bankr. D. Alaska Mar. 25, 2009) .......................................8, 13

*City of Stilwell, Okla. v. Ozarks Rural Elec. Coop. Corp.*, 79 F.3d 1038 (10th Cir.1996) ........................................................................16–18

*D.J. Christie, Inc. v. Meyer (In re D.J. Christie, Inc.)*, No. 11-40764, 2012 WL 37645 (Bankr. D. Kan. Jan. 9, 2012).................................12

*Eleutian Tech., LLC v. Glob. Educ. Techs., LLC*, No. 07-CV-00181-ABJ, 2008 WL 11337640 (D. Wyo. Dec. 30, 2008) ................................21

*Fry v. United States (In re Twin Lakes Real Estate, LLC)*, No. 05-2654, 2007 WL 2964664 (Bankr. D. Utah Apr. 27, 2007)........................................8–9

*Fuel Oil Supply & Terminaling v. Gulf Oil Corp.*, 762 F.2d 1283 (5th Cir. 1985).................7, 10

*In re Grupo Unidos Por El Canal S.A.*, No. 14-mc-80277-JST (DMR), 2015 U.S. Dist. LEXIS 52358 (N.D. Cal. Apr. 21, 2015) .......................................................19

*Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149 (3d Cir. 1989)...................................................................21

*Hill v. Akamai Tech., Inc. (In re MS55, Inc.)*, 477 F.3d 1131 (10th Cir. 2007).........................8–9

*Hughes v. Abell*, No. 09-220 (JDB), 2014 WL 12787807 (D.D.C. Feb. 10, 2014) ...........................................19

*Kane Cty., Utah v. United States*, 928 F.3d 877 (10th Cir. 2019) .............................................6, 14

*Kenan v. FDIC (In re George Rodman, Inc.)*,
    33 B.R. 348 (Bankr. W.D. Okla. 1983) ....................................................................7

*Kittay v. Landegger (In re Hagerstown Fiber Ltd. P'ship)*,
    277 B.R. 181 (Bankr. S.D.N.Y. 2002) ..................................................................21

*Louisiana World Exposition v. Federal Ins. Co.*, 858 F.2d 233 (5th Cir. 1988) ..........10

*Nat'l Farm Lines v. I. C. C.*, 564 F.2d 381 (10th Cir. 1977) ........................................15

*NationsBank, N.A. v. Commercial Fin. Servs., Inc. (In re Commercial Fin. Servs.,*
    *Inc.)*, 268 B.R. 579 (Bankr. N.D. Okla. 2001) ........................................................8

*Nelson v. Byrne*, No. 1:16-CV-042, 2016 WL 11477038 (D.N.D. Oct. 3, 2016) .........21

*Official Comm. of Unsecured Creditors v. Chinery (In re Cybergenics Corp.)*,
    330 F.3d 548 (3d Cir. 2003) *(en banc)* .................................................................9

*Official Comm. of Unsecured Creditors of Florida Grp., Inc. v. First Union Nat.*
    *Bank of Florida (In re Florida Grp., Inc.)*,
    123 B.R. 923 (Bankr. M.D. Fla. 1991) ..............................................................9–10

*Official Comm. Unsecured Creditors of Grand Eagle Cos., Inc. v. ASEA Brown*
    *Boverie, Inc.*, 313 B.R. 219 (N.D. Ohio 2004) ......................................................10

*Official Comm. of Unsecured Creditors of Teu Holdings, Inc. v. Kemeny (In re*
    *TEU Holdings, Inc.)*, 287 B.R. 26 (Bankr. D. Del. 2002) ......................................21

*Official Creditor's Comm. of Wesco Prods. Co. v. Alloy Auto. Co. (In re Wesco*
    *Prods. Co.)*, 22 B.R. 107 (Bankr. N.D. Ill. 1982) ..................................................10

*Payne v. Tri-State Careflight, LLC*, 322 F.R.D. 647 (D.N.M. 2017) ...........6, 15, 18–19

*Richman v. First Woman's Bank (In re Richman)*, 104 F.3d 654 (4th Cir. 1997) ........ *passim*

*Schoenman v. F.B.I.*, 263 F.R.D. 23 (D.D.C. 2009) ....................................................14

*Serrano v. New Mexico*,
    No. 17-CV-01156-RB-SCY, 2018 WL 2723781 (D.N.M. June 6, 2018) ...............20

*Starzynski v. Sequoia Forest Indus.*, 72 F.3d 816 (10th Cir. 1995) ..............................9

*State Farm Tire & Cas. Co. v. Aberdeen Enterprizes II, Inc.*,
    No. 18-CV-654-TCK-FHM, 2019 WL 3500914 (N.D. Okla. Aug. 1, 2019) .........18

*Term Loan Holder Comm. v. Ozer Grp., LLC (In re Caldor Corp.)*,
    303 F.3d 161 (2d Cir. 2002) ............................................................................7–8

*Tri-State Generation & Transmission Ass'n, Inc. v. New Mexico Pub. Regulation Comm'n*, 787 F.3d 1068 (10th Cir. 2015)...........................................................16–17

*United States v. Copar Pumice Co., Inc.*, No. CV 09-1201 JP/KBM, 2013 WL 12159321, (D.N.M. Aug. 28, 2013)............................6

*United States v. Texas E. Transmission Corp.*, 923 F.2d 410 (5th Cir. 1991)...............................6

*Unsecured Creditors' Comm. of Dollar Corp. v. Hyundai Motor Co. (In re Dollar Corp.)*, 139 B.R. 192 (Bankr. E.D. Mich. 1992) ...................................21

*Utah Ass'n of Ctys. v. Clinton*, 255 F.3d 1246 (10th Cir. 2001)...................................................14

*Veremejo Park Corp. v. Kaiser Coal Corp (In re Kaiser Steel Corp.)*, 998 F.2d 783 (10th Cir. 1993) ...................................................................... *passim*

*W. Energy All. v. Zinke*, 877 F.3d 1157 (10th Cir. 2017) ...........................................12

**Statutes**

11 U.S.C. § 1109(b) ...................................................................................... *passim*

**Other Authorities**

Fed. R. Bankr. P. 7024.......................................................................................4–5

Fed. R. Bankr. P. 9019.......................................................................................15

Fed. R.Civ. P. 24 ...................................................................................... *passim*

Changzhou Zhong Lian Investment Co., Ltd. ("Z.L. Investment"), Changzhou Inter Universal Machine & Equipment Co., Ltd. ("CIU"), and Frictionless, LLC ("Frictionless") (collectively, the "Arbitration Creditors")—creditors of the Debtor, Frictionless World, LLC (the "Debtor")—and Li Zhixiang ("Mr. Li," and collectively with the Arbitration Creditors, the "Arbitration Participants"), respectfully submit this response to the motion (the "Motion") of the Official Committee of Unsecured Creditors (the "Committee") to intervene as a second, redundant plaintiff in this adversary proceeding (the "Adversary Proceeding").

## PRELIMINARY STATEMENT

1.      This Adversary Proceeding is primarily a bilateral dispute between the Debtor, on the one hand, and the Arbitration Participants, on the other.  (The Debtor and the Arbitration Participants are collectively referred to as the "Parties.")  The Parties, as well as the Debtor's principal, Daniel Banjo—who is not a party to this Adversary Proceeding—actively arbitrated the substance of the dispute in this Adversary Proceeding for nearly six months before the Petition Date as part of the Arbitration.[1]  In connection with the Arbitration, the Debtor expressly agreed to arbitrate multiple times.  Accordingly, the Parties' dispute must be arbitrated under the FAA, based on the well-settled law the Arbitration Participants have previously presented to the Court. *See* Adv. Pro. Docket Nos. 22, 31 (together, the "Arbitration Motion").

2.      In an apparent effort to help the Debtor escape its obligation to arbitrate, the Committee seeks to intervene in this Adversary Proceeding.  Notably, the Committee does not seek to replace the Debtor as representative of the bankruptcy estate's claims against the

---

[1]      Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Arbitration Participants' Consolidated Memorandum of Law, dated November 1, 2019.  *See* Adversary Proceeding Docket No. 22; Admin. Case Docket No. 102.  Documents filed in the Debtor's main administrative case will be cited as "Admin. Case Docket No. ___."

Arbitration Participants.  Instead, the Committee seeks to be added as a *second* plaintiff here, even though the Committee elsewhere claims "it should really be the principal proponent of this Adversary Proceeding."  Motion, p. 12.  Indeed, the Committee acknowledges the redundancy of its request:  it admits it "does not raise any new claims" against the Defendants and simply seeks to join "the claims and defenses already at issue."  *Id.* at 13.  But the Committee ignores that it lacks standing to assert the same claims the Debtor is already asserting in this Adversary Proceeding.[2]

3.     Nor does the Committee identify any concrete interests it seeks to protect by intervening, beyond the generic interests of the "unsecured creditor body."  *Id.* at 10.  But the interest of that "body" is to maximize the distribution to unsecured creditors by increasing the amounts available to distribute, while minimizing administrative expenses and bringing the bankruptcy case to a speedy conclusion.  The Motion and the resulting relief sought by the Committee will achieve none of those things:

- The Debtor, as the statutory representative of the bankruptcy estate, already represents any interest in maximizing the value of the estate through claims against the Arbitration Participants.  While the Committee vaguely asserts it has unique "input and expertise" to offer, it identifies no actual input or expertise it would offer if allowed to intervene.  Motion, p. 11.  And the Committee certainly points to no shortcomings in the Debtor's prosecution of the estate's claims to date.

- The Committee's proposed approach—which, like the Debtor's, requires the Parties to resolve their dispute first in this Court, then in the federal district court, and then in the Arbitration, rather than doing it all in the Arbitration alone—will at least double the rate at which the estate's assets will be depleted in connection with

---

[2]     Perhaps the Committee has standing to assert the Debtor's Fifth Claim for Relief, objecting to creditor claims, but the Committee recently filed objections to the Arbitration Creditors' proofs of claim.  *See* Admin Case Docket No. 166; Adversary Proceeding Docket No. 52 (the "Claim Objection").  The Claim Objection merely incorporates the Debtor's Adversary Proceeding claims against the Arbitration Creditors and adds no new substantive allegations against them, *id.* at pp. 5-7, further confirming the redundancy of the Committee's efforts.

this dispute.  Administrative expenses will go way up, not down, if the Motion is granted.

- Unlike the Arbitration—which presents a one-stop shop for resolving the Parties' dispute in nine months or less, with no meaningful appeals—the Committee's proposed approach of resolving the Parties' dispute in three different forums will unduly delay resolution of this dispute by *years*.[3]

4.      In short—beyond its naked gambit to forum shop out of the Arbitration, or to assert generic interests already represented by the Debtor—it is unclear what the Committee actually seeks to accomplish by intervening.  It does not seek to replace the Debtor.  It does not seek to bring new claims as a plaintiff.  The Committee apparently seeks to intervene as a second plaintiff based solely on its contingent interest in the outcome.  As set forth below, this fails the test for intervention under applicable law; thus, the Motion should be denied for several reasons.

5.      *First*, the Committee devotes a quarter of its Motion (*see* pp. 5–7) to an argument that contradicts binding Tenth Circuit precedent.  Specifically, the Tenth Circuit has rejected the Committee's assertion that § 1109(b) of the Bankruptcy Code allows it to intervene as of right in an adversary proceeding.  *Veremejo Park Corp. v. Kaiser Coal Corp. (In re Kaiser Steel Corp.)*, 998 F.2d 783, 790 (10th Cir. 1993) (§ 1109(b) "does not afford a right to intervene under Rule 24(a)(1), even though such 'parties in interest' enjoy the general right to 'monitor' the progress of the chapter 11 case") (internal citation omitted).  Instead, the Committee repeatedly touts decisions from the First, Second, and Third Circuits that are not the law here.  The Committee cannot intervene as of right simply on its say-so.  *See infra*, pp. 6–8.

---

[3]     Moreover, it is unclear why the Debtor and the Committee favor this Court over the Arbitration, considering that arbitral awards are more readily enforced in China (where many of the Arbitration Participants are located), whereas it is virtually impossible to enforce a U.S. court judgment there.  Even in a best-case scenario under the Debtor's and the Committee's approach, they would likely wind up with an unenforceable judgment after years of litigation and spending large swathes of the estate's assets.

6. *Second*, the Committee has no standing to assert the claims in the Adversary Proceeding because the Debtor is already asserting those claims in its own name. At best, under Tenth Circuit law, the Committee could have derivative standing under certain circumstances to assert the claims of the bankruptcy estate. But the Committee has ***no*** such standing where—as the Committee admits—the Debtor has already asserted those same claims. *See infra*, pp. 8–11.

7. *Third*, the Motion fails to justify intervention under Fed. R. Civ. P. 24(a)(2), 24(b), or 24(c), which are incorporated into Fed. R. Bankr. P. 7024. The Committee has confirmed it merely seeks to duplicate the Debtor's existing claims. This is impermissible and certainly does not warrant adding the Committee as a second plaintiff whose presence will add nothing to the substance of this dispute beyond added expenses for the Debtor's estate. *See infra*, pp. 12–20.

8. *Fourth*, and as has already been briefed in the Arbitration Motion, the Debtor's non-core, Pre-Petition State Law Claims must, at a minimum be resolved in the Arbitration proceeding instead of this Court. *See* Adv. Pro. Docket Nos. 22, 31. The Committee's Motion—which at best asserts rights that are derivative of the Debtor's—cannot change or abrogate the Parties' valid and binding agreement to arbitrate those Claims. Even if the Committee were authorized to assert the Debtor's claims on a derivative basis, it would be bound by the Debtor's agreement to arbitrate. *See infra*, pp. 20–22.

9. For these reasons and the others described below, the Motion should be denied and the Committee should not be permitted to intervene as a second—and redundant—plaintiff here.[4]

---

[4] The Arbitration Participants acknowledge the Debtor's bankruptcy estate has a right to assert claims against them, subject, of course, to the Arbitration Participants' rights under the FAA to have those claims heard in the Arbitration as they and the Debtor agreed pre-petition. The Arbitration Participants thus have no objection to the Committee ***replacing*** the Debtor as the representative of the bankruptcy estate asserting the estate's claims in the Arbitration and/or this Adversary Proceeding. But that is not what the Motion seeks, even though the Committee at points suggests that "it should really be the principal proponent" of the estate's claims. Motion, p. 12.

- 4 -

## ARGUMENT

**I.    The Committee Cannot Bear its Burden of Proving It is Entitled to Intervention.**

10.    Federal Rule of Civil Procedure 24 ("Rule 24"), made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7024, governs a motion to intervene in an adversary proceeding.  *In re Kaiser*, 998 F.2d at 790.  Under Rule 24(a), a putative intervenor is allowed to intervene as of right when, on timely motion, the intervenor:

(1)    is given an unconditional right to intervene by a federal statute; or

(2)    claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a).

11.    Under Rule 24(b), courts have discretion to allow permissive intervention when, on timely motion, a putative intervenor:  (a) is given a conditional right to intervene by a federal statute; or (b) has a claim or defense that shares a common question of law or fact with the main action.  *See* Fed. R. Civ. P. 24(b)(1).  The court must also consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  *See* Fed. R. Civ. P. 24(b)(3).

12.    Finally, whether intervention is sought as of right (under Rule 24(a)) or on a permissive basis (under Rule 24(b)), Rule 24(c) requires any motion to intervene to "state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought."  Fed. R. Civ. P. 24(c).

- 5 -

13.     The Committee has the burden of establishing all of the elements for intervention under either Rule 24(a) or Rule 24(b).  *Kane Cty., Utah v. United States*, 928 F.3d 877, 890 (10th Cir. 2019); *Payne v. Tri-State Careflight, LLC*, 322 F.R.D. 647, 657 (D.N.M. 2017).  To be sure, the Tenth Circuit has "historically taken a liberal approach to intervention."  *See* Motion, p. 8 (citing *Kane Cty.*, 928 F.3d at 890).  But as one District Court in this Circuit has noted:

> These statements [concerning liberal construction of intervention] should not be understood . . . as meaning that every possible doubt is to be resolved in favor of allowing intervention whenever it is sought. Liberality "does not equate with rights of indiscriminate intervention" and **the rule continues to set bounds that must be observed**.

*United States v. Copar Pumice Co., Inc.*, No. CV 09-1201 JP/KBM, 2013 WL 12159321, at *3 (D.N.M. Aug. 28, 2013) (emphasis added) (citing 7C C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1904 at 269 (3d ed. 2007)); *see also United States v. Texas E. Transmission Corp.*, 923 F.2d 410, 413 (5th Cir. 1991) (same).

14.     Here, the Committee has failed to meet its burden to establish an unconditional right to intervene under Rule 24(a)(1), the right to intervene under Rule 24(a)(2), or permissive intervention under Rule 24(b).  Nor does the Committee set out any additional claims or defenses in a separate pleading, as required by Rule 24(c).  For all these reasons, the Motion should be denied and the Committee should not be permitted to be added as a second plaintiff here.

## II.     Under Controlling Tenth Circuit Precedent, the Committee Does Not Have an Unconditional Right to Intervene Under Rule 24(a)(1) and 11 U.S.C. § 1109(b).

15.     Initially, the Committee's Motion should be denied because it is based on the fatally flawed premise that 11 U.S.C. § 1109(b) grants the Committee an "unconditional right to intervene in the Adversary Proceeding."  Motion, p. 7.  The Tenth Circuit has expressly held the opposite: 11 U.S.C. § 1109(b) "does ***not*** afford a right to intervene under Rule 24(a)(1)."  *In re Kaiser*, 998 F.2d at 790 (citation omitted) (emphasis added).

16.     To be sure, § 1109(b) states that a "party in interest," including a creditors'
committee, "may appear and be heard on any issue in a case under this chapter"—i.e., in a Chapter
11 bankruptcy case.  11 U.S.C. § 1109(b).  And, as the Committee points out, the First, Second,
and Third Circuits have interpreted this language to grant creditors' committees an unconditional
right to intervene in adversary proceedings under Rule 24(a)(1).  *See* Motion, pp. 6–7 (citing
*Assured Guaranty Corp. v. Fin. Oversight & Mgmt. Bd. For Puerto Rico (In re Fin. Oversight &
Mgmt. Bd. for Puerto Rico)*, 872 F.3d 57, 63 (1st Cir. 2017); *Term Loan Holder Comm. v. Ozer
Grp., LLC (In re Caldor Corp.)*, 303 F.3d 161, 175–76 (2d Cir. 2002); *Official Unsecured
Creditors' Comm. v. Michaels (In re Marin Motor Oil, Inc.)*, 689 F.2d 445, 446 (3d Cir. 1982)).

17.     But the Tenth Circuit expressly rejected this argument in *Kaiser*, holding that a
party in interest "enjoy[s] the general right to monitor the progress of the chapter 11 case," but
does not have an unconditional right to intervene in every adversary proceeding within a
bankruptcy case.  *In re Kaiser*, 998 F.2d at 790 (quotation and citation omitted); *see also Kenan v.
FDIC (In re George Rodman, Inc.)*, 33 B.R. 348, 350 (Bankr. W.D. Okla. 1983) (rejecting
creditors' committee's argument that Section 1109(b) grants an unconditional right to intervene in
an adversary proceeding under Rule 24(a)(1)).  The Fourth and Fifth Circuits, and lower courts in
other Circuits, have similarly held that creditors' committees do not have an unconditional right to
intervene in adversary proceedings under Rule 24(a)(1) and Section 1109(b).  *See, e.g., Richman
v. First Woman's Bank (In re Richman)*, 104 F.3d 654, 658 (4th Cir. 1997); *Fuel Oil Supply &
Terminaling v. Gulf Oil Corp.*, 762 F.2d 1283, 1287 (5th Cir. 1985); *Big Rivers Elec. Corp. v.
Thorpe*, 195 B.R. 664, 667 (W.D. Ky. 1996); *Catholic Bishop of N. Alaska v. Cont'l Ins. Co. (In
re Catholic Bishop of N. Alaska)*, Case No. F08–90019–DMD, 2009 WL 8446700, at *2 (Bankr.
D. Alaska Mar. 25, 2009).

18.     The Committee cited *Kaiser* in its Motion, and *Kaiser* was also discussed in the cases the Committee relies upon from other Circuits.  *See* Motion, pp. 5–6; *see also In re Fin. Oversight & Mgmt. Bd.*, 872 F.3d at 62; *In re Caldor*, 303 F.3d at 167.  Yet the Committee failed to acknowledge that *Kaiser* is binding and unequivocally rejects its main argument in favor of intervention.[5]  Under that controlling precedent, the Committee has no unconditional right to intervene under Rule 24(a)(1).  For this reason alone, its Motion should be denied.

### III.   The Committee Lacks Standing to Pursue Claims On Behalf of the Debtor Because the Debtor is Already Pursuing the Same Claims.

19.     The Motion also fails because uniform Tenth Circuit law makes clear the Committee lacks standing to assert redundant claims that the Debtor is already prosecuting against the Arbitration Participants.  Specifically, the Bankruptcy Code does not confer independent standing on a creditor's committee to pursue claims on behalf of a debtor.  *See, e.g., Hill v. Akamai Tech., Inc. (In re MS55, Inc.)*, 477 F.3d 1131, 1139 (10th Cir. 2007) ("As a matter of law, a creditors' committee does not have its own right to bring avoidance actions."); *Fry v. Unites States (In re Twin Lakes Real Estate, LLC)*, No. 05-2654, 2007 WL 2964664, at *5 (Bankr. D. Utah Apr. 27, 2007) ("Section 1109 does not provide a party in interest standing to raise causes of action held by the Debtor.  It merely provides the general right to monitor the progress of the chapter 11 case.  Thus, a party in interest who seeks to intervene in an adversary proceeding must still show that he or she has standing to raise the claims at issue.") (internal quotations omitted).

---

[5]     The only other Tenth Circuit case that the Committee cites in its Motion—*NationsBank, N.A. v. Commercial Fin. Servs., Inc.  (In re Commercial Fin. Servs., Inc.)*—is inapposite.  268 B.R. 579 (Bankr. N.D. Okla. 2001).  That case does not discuss either Section 1109(b) or Rule 24(a), and has no meaningful discussion of intervention at all.  *See id.* at 584 (denying a motion to dismiss a creditor's adversary proceeding to impose a constructive or resulting trust on the debtor's accounts).

20.     Here, the Committee admits it does not seek to "raise any new claims" against the Defendants and instead merely seeks to join "the claims and defenses already at issue in the Adversary Proceeding."  Motion, p. 13.  In other words, the Committee seeks to be added as a *second* plaintiff here, simply to assert the same claims already being asserted by the existing plaintiff (the Debtor) against the same Defendants.  But Tenth Circuit law precludes such a wasteful and redundant tactic.  *See, e.g., In re MS55,* 477 F.3d at 1139; *In re Twin Lakes Real Estate, LLC*, 2007 WL 2964664, at *5.  Other Courts outside the Tenth Circuit have also so held. *See, e.g. Official Comm. of Unsecured Creditors of Florida Grp., Inc. v. First Union Nat. Bank of Florida (In re Florida Grp., Inc.)*, 123 B.R. 923, 924 (Bankr. M.D. Fla. 1991) ("Where, as here, the debtor-in-possession has diligently sought to pursue its cause of action, the creditors committee is precluded from proceeding on the same matter.").

21.     Simply put, the Committee can't intervene to pursue the same claims the Debtor is already asserting.  And the Committee's assumption that it can do so is simply wrong.  A creditors' committee may have derivative standing to pursue claims on behalf of the debtor only "*when the debtor-in-possession has failed to do so.*"  *Starzynski v. Sequoia Forest Indus.*, 72 F.3d 816, 821 (10th Cir. 1995) (stating *in dicta* the circumstances in which such standing is available) (emphasis added); *see also Official Comm. of Unsecured Creditors v. Chinery (In re Cybergenics Corp.),* 330 F.3d 548, 553 (3d Cir. 2003) *(en banc)* (derivative standing available to creditors' committee when the debtor-in-possession's refusal to pursue an avoidance action was unreasonable); *Canadian Pac. Forest Prods. Ltd. v. J.D. Irving, Ltd. (In re Gibson Grp., Inc.),* 66 F.3d 1436, 1440–46 (6th Cir. 1995) (creditor can be granted permission to pursue an avoidance action if the debtor-in-possession's refusal to do so was unjustified); *Louisiana World Exposition v. Federal Ins. Co.,* 858 F.2d 233, 247–52 (5th Cir. 1988) (creditors' committee could be granted derivative standing to

sue the corporate debtor's officers on behalf of corporation where the debtor's refusal to do so was unjustified).

22.     However, no derivative standing exists where, as here, the Debtor is already pursuing the same claims the Committee wants to assert as a second plaintiff.  In this circumstance, "the creditors committee is precluded from proceeding on the same matter," including by intervening in an action on those claims.  *In re Florida Grp., Inc.*, 123 B.R. at 924 ("Debtor's lawsuit will adequately protect any rights of the estate and by such precludes the Creditors Committee from either intervening in this case or bringing a separate lawsuit."); *Official Comm. Unsecured Creditors of Grand Eagle Cos., Inc. v. ASEA Brown Boverie, Inc.*, 313 B.R. 219, 226 (N.D. Ohio 2004) ("Any right a creditors' committee has to prosecute the avoidance action under *Gibson,* therefore, is extinguished when the trustee commences suit with similar claims."); *Official Creditor's Comm. of Wesco Prods. Co. v. Alloy Auto. Co. (In re Wesco Prods. Co.)*, 22 B.R. 107, 110 (Bankr. N.D. Ill. 1982) (creditors' committee "has no standing to sue" where debtor-in-possession "is performing its duties properly"); 7 Collier on Bankruptcy, ¶ 1103.05[6] at 1103–35 ("An action on behalf of a debtor cannot be maintained if the debtor is already pursuing the same action."); *see also Fuel Oil Supply*, 762 F.2d at 1287 (noting the same standing analysis applies to both initiating an adversary proceeding and intervening under Rule 24).

23.     This rule makes perfect sense as a practical matter, especially in a bankruptcy case like this one where the estate is paying the litigation costs of both the Debtor and the Committee. If a creditors' committee could intervene in any adversary proceeding, even if the debtor were already pursuing claims of the bankruptcy estate, estate assets would be depleted at twice the rate (or more), with no countervailing benefit to the estate or creditors by virtue of a committee's intervention.  Unfortunately, that is exactly the wasteful scenario that the Committee proposes in

its Motion.  The Debtor's estate (already represented by two law firms) will burn through cash to pay two more law firms, while the Committee, by its own admission, does nothing more than join "the claims and defenses already at issue."  Motion, p. 13.  This is unfair to the unsecured creditors—including, but not limited to, the Arbitration Creditors—who will receive no benefit from doubling the amount of plaintiffs' lawyers when the Debtor's counsel is already aggressively representing the estate's interests.[6]

24.     Accordingly, because the Debtor is already pursuing the claims on which the Committee seeks to join, the Committee lacks standing to simultaneously pursue those claims.  For this reason, too, its Motion should be denied to the extent that the Committee merely seeks to be added as a second—and redundant—plaintiff here.

## IV. The Committee Cannot Satisfy the Standard for Intervention as of Right Under Rule 24(a)(2).

25.     In addition to the Committee's inability to satisfy the requirements of Rule 24(a)(1), the Motion should also be denied because the Committee cannot intervene as of right under Rule 24(a)(2).  Under that Rule, a putative intervenor has the burden of establishing all of the following: (1) its motion to intervene is timely, (2) it has an interest in the property or transaction, (3) its ability to protect such interest might be impaired without intervention, ***and*** (4) the interest at issue is not adequately represented by the existing parties.  *In re Kaiser*, 998 F.2d at 790–91 (citation omitted) (noting these standards are conjunctive and each element must be satisfied for intervention under Rule 24(a)(2)).

---

[6]     By contrast, the estate's assets would not be wasted on redundancies if the Committee instead focused on investigating and pursuing potential estate claims against third-parties, including, but not limited to, Mr. Banjo and certain entities he controls that have previously received transfers from or done business with the Debtor, and continue to do so.  The Arbitration Creditors—who hold the vast majority of the unsecured claims in this case in terms of dollar value—will raise this issue with the Committee under separate cover.

26.     Here, the Committee has not met its burden of demonstrating that:  (i) it has a sufficient interest in the Adversary Proceeding; (ii) its interests would be impaired without intervention; and (iii) the existing parties do not adequately represent the Committee's interests. For each of these reasons, the Motion should be denied.

27.     *First*, the Committee cannot show it has "a significantly protectable interest" in the claims asserted in this Adversary Proceeding.  *In re Kaiser*, 998 F.2d at 790 (citations omitted). The interest must be "a specific legal or equitable one" for intervention to be warranted.  *D.J. Christie, Inc. v. Meyer (In re D.J. Christie, Inc.)*, No. 11-40764, 2012 WL 37645, at *1 (Bankr. D. Kan. Jan. 9, 2012) (citation omitted).  "A protectable interest is one that would be impeded by the disposition of the action."  *W. Energy All. v. Zinke*, 877 F.3d 1157, 1165 (10th Cir. 2017) (quotation and citation omitted).  Finally, the interest cannot be merely "a third person's contingent interest in the outcome of pending litigation."  *In re Kaiser*, 998 F.2d at 791 (quoting *In re Environmental Elec. Sys., Inc.*, 11 B.R. 962, 964 (Bankr. N.D. Ga. 1981)).

28.     Here, the Committee seeks to make a single flawed argument do "double duty" in repeating its argument that it has a significant protectable interest in the Adversary Proceeding because § 1109(b) gives the Committee a right to be heard on all issues in the Debtor's case.  *See* Motion, p. 10.  But the Committee is wrong twice.  First, as noted above, the Committee's position on § 1109(b) is not the law in the Tenth Circuit.  *See supra*, ¶¶ 15–18.  Second, the Committee fails to point out, as it must, any ***specific*** direct, noncontingent interest that it must protect by intervening.

29.     The weakness of the Committee's position is confirmed by the cases holding that a third party's contingent interest in the outcome of litigation commenced by a debtor is not a significantly protectable interest justifying that third-party's intervention.  *See, e.g., In re Kaiser,*

998 F.2d at 790–91 (contingent rights fail to satisfy the requirement that an intervenor assert "direct, substantial, and legally protectable" rights); *In re Catholic Bishop of N. Alaska,* 2009 WL 8446700 at *2 (denying motion of committee for abuse claimants to intervene in debtor's insurance coverage litigation because state law precluded direct actions by such victims against plaintiffs' insurers); *In re Richman*, 103 F.3d at 660 (creditors denied intervention in a trustee's turnover action (like the Debtor's here) because the mere fact the lawsuit "*might accrue"* a distribution to the creditors did not support an interest warranting intervention) (emphasis in original).

30.     Just so, the Committee's only expressed interest in the Debtor's claims is based on the contingency that the outcome of the Adversary Proceeding "might accrue" a greater distribution to creditors.  That rationale is both insufficient as a matter of law, and unwise as a matter of policy.  If accepted, this would allow ***any*** creditors' committee to intervene in ***any*** adversary proceeding, because virtually all adversary proceedings ultimately impact creditor recoveries when assets are ultimately distributed from a debtor's estate.  This is exactly the kind of indiscriminate, unrestricted intervention the Tenth Circuit rejected in *Kaiser*.  998 F.2d at 790.

31.     *Second*, the Motion fails because the Committee has not shown how its interests would be impaired without intervention.  Under Tenth Circuit law, intervenors must show "that the disposition of this action may as a practical matter impair or impede their ability to protect their interest."  *Utah Ass'n of Ctys. v. Clinton*, 255 F.3d 1246, 1253 (10th Cir. 2001).  Courts apply "practical judgment" to determine "whether the strength of the interest and the potential risk of injury to that interest justify intervention."  *Kane Cty.*, 928 F.3d. at 891–92 (citations omitted).

32.     Here, the Committee fails to identify either any specific interests it seeks to assert by intervening, or any specific way in which its interests might be impaired or impeded without intervention.  Instead, the Committee again relies on vague assertions that the "rights and remedies

of the creditors may be severely impaired" without the Committee's "input and expertise" in the Adversary Proceeding. Motion, p. 11. Such bare allegations are insufficient to meet a putative intervenor's burden. *See, e.g., Schoenman v. F.B.I.*, 263 F.R.D. 23, 25 (D.D.C. 2009) (denying intervention where intervenor "has not set forth any specific interest . . . nor has he explained how disposition of the instant action may impede his ability to protect any specific interest of his own").

33.     Indeed, interests are not impeded when the existing parties have the same incentives as the putative intervenor. In *Bottoms v. Dresser Indus., Inc.*, 797 F.2d 869 (10th Cir. 1986), for example, the court denied an attempt by an alleged co-owner of a patent to intervene in a suit brought by the patent's other co-owner, who was seeking to recover royalties under the patent. *Id.* at 873–74. The Tenth Circuit held that the intervenor's interests were not impaired without intervention, even if denying the intervenor's motion precluded any action by the intervenor against the party that owed royalties, because the other co-owner had the identical incentive to maximize the recovery of royalties owed and the intervenor could collect his portion from the other co-owner in a separate action. *Id.*

34.     Likewise, the Committee is, by its own admission, not bringing anything new to the table here; it seeks to join "the claims and defenses already at issue." Motion, p. 13. Further, the Committee's twin incentives in this lawsuit—to maximize the value of the Debtor's estate and to look out for the interests of unsecured creditors—are shared by the Debtor and the Arbitration Participants, respectively.[7] The Committee has not showed in the slightest how its interests *would* (not "might") be impaired without intervention.

---

[7]     Even if the Committee were somehow worried that, against all logic and history in the Parties' dispute, the Debtor would somehow enter into a "sweetheart" settlement with the Arbitration Participants, the Committee would have the full right to challenge the reasonableness of such a settlement when it was brought before this Court for approval under Fed. R. Bankr. P. 9019.

35.     *Third*, the Motion fails under Rule 24(a)(2) because the Committee has not demonstrated its interests are not adequately represented by the Parties already part of this Adversary Proceeding.  To intervene under either Rule 24(a) or Rule 24(b), the Committee's interests must not already be adequately represented.  *Nat'l Farm Lines v. I. C. C.*, 564 F.2d 381, 383 (10th Cir. 1977); *Payne*, 322 F.R.D. at 664 ("While not a required part of the test for permissive intervention, a court's finding that existing parties adequately protect prospective intervenors' interests will support a denial of permissive intervention.").

36.     The Committee correctly notes it "bears the burden of demonstrating that the existing parties may not adequately represent its interest."  Motion, p. 11.  And the Committee is also correct that "the burden of showing inadequacy is minimal" in some circumstances.  *Id.*  But the Committee only tells half the story regarding this legal standard.  As the Tenth Circuit has explained, this "minimal" standard is inapplicable where "the objective of the applicant for intervention is identical to that of one of the parties."  *City of Stilwell, Okla. v. Ozarks Rural Elec. Coop. Corp.*, 79 F.3d 1038, 1042 (10th Cir.1996) (quotations omitted).  Under such circumstances, the court "presume[s] representation is adequate."  *Tri-State Generation & Transmission Ass'n, Inc. v. New Mexico Pub. Regulation Comm'n*, 787 F.3d 1068, 1072 (10th Cir. 2015); *see also Bottoms*, 797 F.2d at 872–73.  This is true even if a party's *motivation* for pursuing or defending a claim differs from that of a would-be intervenor.  *City of Stilwell,* 79 F.3d at 1042.

37.     Furthermore, "not only does the burden of demonstrating inadequate representation rest on the putative intervenor, but that [*sic*] the burden is at its most onerous where an existing party is under a legal obligation to represent the would-be intervenor's interest.  In such a situation, there must be a *compelling showing* of inadequate representation."  *In re Richman*, 104 F.3d at 660 (emphasis in original) (internal quotes and citations omitted).

38. Here, the Debtor of course has a fiduciary duty to safeguard and maximize the estate for the benefit of creditors. *See, e.g., 25th Street Associated, LLC v. Union Square Assocs., LLC (In re Union Square Assocs., LLC)*, 392 B.R. 474, 481 (Bankr. D. Utah 2008) ("A debtor in Chapter 11 carries certain duties and responsibilities which include the duty to maximize the estate for benefit of creditors."). And the Committee and the Debtor have an identical objective in prosecuting the Adversary Proceeding—maximizing any recovery from the Defendants, and objecting to the creditor claims filed by the Arbitration Creditors. Indeed, this identity of interest is evident from the fact that the Committee only wants to join as a second plaintiff on the Debtor's claims, and is not raising any new claims or defenses of its own. *See* Motion, pp. 12–13.

39. While the Committee's *motivation* for maximizing recovery may be slightly different than the Debtor's—the Debtor's duty is to maximize the value of the estate generally, while the Committee is focused solely on recovery for the unsecured creditors (Motion, pp. 11–12)—this is ultimately of no consequence because the Committee's ultimate *objective*, vis-à-vis this Adversary Proceeding, is still identical to the Debtor's. *City of Stilwell*, 79 F.3d at 1042.[8]

40. Given that the Committee and Debtor have identical objectives in the Adversary Proceeding—even if not identical motivations—it is presumed that the Debtor's representation is adequate. To overcome this presumption, the Committee must make "a concrete showing of circumstances" that the Debtor's representation is inadequate. *Bottoms*, 797 F.2d at 872 (quoting 7A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1909, at 529 (1972)).

---

[8] The alignment between the Debtor's legal duty to maximize the value of its estate for creditors and the Committee's interest in representing the unsecured creditors is even more uniform in this case, because the ***only*** creditors who might benefit from the Debtor's claims against the Defendants in the Adversary Proceeding are unsecured creditors. The Debtor has no secured creditors, as both the Debtor and the Committee have admitted. *See* Admin. Case Docket No. 1, p. 20; Motion, p. 12.

These circumstances include a "showing that there is collusion between the representative and an opposing party, that the representative has an interest adverse to the applicant, or that the representative failed to represent the applicant's interest." *Tri-State Generation*, 787 F.3d at 1073 (quoting *Bottoms*, 797 F.2d at 872–73). Absent such "a concrete showing of circumstances . . . intervention should be denied." *City of Stilwell*, 79 F.3d at 1043 (internal quotations omitted).

41.     The Committee has not even attempted to make such a showing in its Motion. Nor could it. The Debtor is represented by bankruptcy and special litigation counsel approved by the Court. There is no indication whatsoever that the Debtor and its counsel have not diligently pursued the Debtor's claims against the Defendants—as shown by the filing of this Adversary Proceeding and the Debtor's vigorous opposition to the Arbitration Participants' Arbitration Motion—just as the Committee presumably would have done if the Debtor had not. The Committee's vague assertions to having additional or further "input and expertise" to add here is simply not sufficient as a matter of law. *See, e.g., City of Stilwell*, 79 F.3d at 1043.[9]

42.     The Committee has no direct, noncontingent, protectable interest in the Adversary Proceeding, and no such interest that would be impaired without intervention. The Committee and the Debtor obviously share the same objective here; thus, Tenth Circuit law presumes the Debtor will adequately represent any interest the Committee may have, and the Committee has failed to rebut that presumption. Because the Committee's Motion has failed to satisfy the standards for intervention under Rule 24(a)(2), the Court should deny the Motion.

---

[9]     Nor can the Committee amplify its Motion by adding new arguments or evidence for the first time on reply. *See, e.g., State Farm Tire & Cas. Co. v. Aberdeen Enterprizes II, Inc.*, No. 18-CV-654-TCK-FHM, 2019 WL 3500914, at *2 (N.D. Okla. Aug. 1, 2019) ("Because this argument was raised for the first time on reply, and State Farm has therefore not had a meaningful opportunity to respond, the Court finds it improper to consider this argument.") (citing *United States v. Herget*, 585 F. App'x 948, 950–51 (10th Cir. 2014)).

**V.      The Committee Should Not Be Granted Permissive Intervention Under Rule 24(b).**

43.     The Committee similarly should be denied permissive intervention under Rule 24(b).  The Court has discretion to grant a motion to intervene under Rule 24(b) if "(i) the application to intervene is timely; (ii) the applicant's claim or defense and the main action have a question of law or fact in common; and (iii) intervention will not unduly delay or prejudice the adjudication of the original parties' rights."  *Payne*, 322 F.R.D. at 680–81.

44.     The Committee argues it shares common questions of law with the Debtor's claims because the Committee "should really be the principal proponent of this Adversary Proceeding." Motion, p. 12.  But the Committee lacks standing to bring these claims on its own, *supra*, ¶¶ 19–24, and, if allowed to intervene, the Committee would simply be parroting the arguments the Debtor has already made or will be making.[10]  *See In re Grupo Unidos Por El Canal S.A.*, No. 14-mc-80277-JST (DMR), 2015 U.S. Dist. LEXIS 52358, at *15–16 (N.D. Cal. Apr. 21, 2015) ("Permissive intervention may be denied if the addition of the proposed intervenor would . . . make the same arguments as an existing party . . . ."); *Hughes v. Abell*, No. 09-220 (JDB), 2014 WL 12787807, at *6 (D.D.C. Feb. 10, 2014) (denying permissive intervention when the intervenor admits they do "not want to assert any claims or defenses in this litigation").  Further, "[w]hile not a required part of the test for permissive intervention, a court's finding that existing parties adequately protect prospective intervenors' interests will support a denial of permissive intervention." *Payne*, 322 F.R.D. at 664 (citation omitted).  The Committee's failure to present

---

[10]     In fact, the Committee has already parroted and even praised the Debtor's argument in the Committee's Claim Objections.  *See, e.g.*, Admin. Case Docket No. 166 at pp. 5–7 ("incorporat[ing] the Debtor's counterclaims herein as part of its Objection" to the Arbitration Creditors' proofs of claim and stating "the Debtor has done an excellent job . . . in the Adversary Proceeding"); *see also* Admin. Case Docket No. 170.

any new claims or interests—and the already adequate representation of its interests by the Debtor—render permissive intervention by the Committee redundant and, therefore, unnecessary.

45.    Allowing intervention would also unduly prejudice the existing Parties, and ultimately the interests of the Debtor's unsecured creditors—the very class the Committee is tasked with protecting.  The Committee is not bringing any new claims or defenses.  The Committee's active participation here would only increase the rate at which the Debtor's estate will be depleted to pay for the Committee's additional and separate counsel.  Unnecessarily depleting the estate impairs a host of interests:  the Debtor's interest in maximizing the estate's assets; the Committee's interest in maximizing the recovery for all unsecured creditors; and the Arbitration Creditors' interest in maximizing the distribution on their claims.  Nobody wins through permissive intervention.  Thus, the Court should not allow the Committee to intervene under Rule 24(b).

**VI.    The Motion Should Further Be Denied Because It is Deficient Under Rule 24(c).**

46.    Reflecting the redundant nature of its proposed intervention and its ultimate lack of standing, the Committee failed to file "a pleading that sets out the claim or defense for which intervention is sought," as required under Rule 24(c).  For this reason, too, the Motion should be denied.  *See, e.g., Serrano v. New Mexico*, No. 17-CV-01156-RB-SCY, 2018 WL 2723781, at *3 (D.N.M. June 6, 2018) (denying intervention motion filed without a pleading).  This procedural defect confirms the Committee's open admission that it is not raising anything new, and is instead simply joining in the Debtor's existing claims and defenses.  *See* Motion, pp. 12–13.

**VII.   Because the Committee Seeks to Assert in the Adversary Proceeding Only the Debtor's Rights and Claims that Must be Arbitrated, the Committee's Intervention is Subject to the Debtor's Arbitration Agreement.**

47.    For the avoidance of doubt, even if the Committee had standing here (it does not), and even if it could satisfy the requirements for intervention under Rule 24 (it has not and cannot),

and even if its Motion were granted (it should be denied), *none* of this impacts the outcome of the Arbitration Participants' pending Arbitration Motion.

48.    In another contortion to deny the Arbitration Participants their bargained-for right to arbitrate all disputes with the Debtor, the Committee emphasizes throughout its Motion that it "is not a party to the subject 'Arbitration Agreement' or the Arbitration."  *See* Motion, pp. 4, 11. But the Committee's attempt to evade the Arbitration is misplaced because, if allowed to assert the Debtor's arbitrable claims, the Committee would be bound by the Debtor's agreement to arbitrate those claims.

49.    Again, the Motion only seeks to pursue claims on behalf of the bankruptcy estate that belong to, and are already being asserted by, the Debtor.  As explained at length in the Arbitration Motion filings, those claims are predominantly non-core, Pre-Petition State Law Claims that are subject to the Parties' valid and binding agreement to arbitrate.  *See* Adv. Pro. Docket Nos. 22, 31.  The law is clear that the Debtor's pre-petition agreement to arbitrate equally binds the Committee when it asserts the Debtor's Claims.  *See, e.g.*, *Official Comm. of Unsecured Creditors of Teu Holdings, Inc. v. Kemeny (In re TEU Holdings, Inc.)*, 287 B.R. 26, 37 (Bankr. D. Del. 2002) (requiring unsecured creditors' committee to arbitrate adversary proceeding claims within the scope of the debtor's pre-petition arbitration agreement); *Unsecured Creditors' Comm. of Dollar Corp. v. Hyundai Motor Co. (In re Dollar Corp.)*, 139 B.R. 192 (Bankr. E.D. Mich. 1992) (same); *see also Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1155 (3d Cir. 1989) ("trustee is bound by the arbitration clause of the Customer Agreement with respect to claims it inherited from the debtor . . . ."); *Kittay v. Landegger (In re Hagerstown Fiber Ltd. P'ship)*, 277 B.R. 181, 199 (Bankr. S.D.N.Y. 2002) ("Where the trustee sues as successor to the debtor, he is bound by an arbitration clause in the debtor's pre-petition contract.").

- 20 -

50.     And the law is further clear that parties cannot use intervention to game their way into, or out of, a particular venue.  *See, e.g., Brazell v. Waite*, 525 F. App'x 878, 881 (10th Cir. 2013) (noting federal courts may disregard a plaintiff's "fraudulent joinder" where a "resident defendant against whom no cause of action is stated" is added in order to prevent removal under a federal court's diversity jurisdiction); *Nelson v. Byrne*, No. 1:16-CV-042, 2016 WL 11477038, at *4 (D.N.D. Oct. 3, 2016) (dismissing action against fraudulently joined defendant who was added to preclude removal of the plaintiff's action to stay arbitration and ordering the parties to arbitrate, including issues of arbitrability under AAA Rules); *Eleutian Tech., LLC v. Glob. Educ. Techs., LLC*, No. 07-CV-00181-ABJ, 2008 WL 11337640, at *3 (D. Wyo. Dec. 30, 2008) ("Case law has repeatedly held that an intervenor is held to have waived his privilege to change the venue of a suit.").

51.     For all these reasons, the Committee's Motion has no bearing whatsoever on the outcome of the pending Arbitration Motion as a matter of law.

## VIII.   If the Court Were Inclined to Grant Intervention, the Court Should Join Other Courts in Narrowly Tailoring its Scope.

52.     For the many reasons detailed above, the Committee's Motion should be denied. Even if the Court saw some limited merit in the Motion, however, the Court can and should limit the scope of intervention to avoid unnecessarily depleting the estate's assets and further complicating and protracting the Parties' dispute to the detriment of all Parties, other unsecured creditors, and the Court.  As one of the cases relied upon heavily by the Committee notes:

> The precise scope of the [creditors' committee]'s intervention is a matter committed to the district court's "broad discretion." **Courts have exercised that discretion to limit the participation of intervenors as of right in a number of ways.** An intervening party, for example, cannot "preclude other parties from settling their own disputes." *Local No. 93, Int'l Ass'n of Firefighters v. City of*

*Cleveland*, 478 U.S. 501, 529, 106 S.Ct. 3063, 92 L.Ed.2d 405 (1986); *see also Smart World Techs., LLC v. Juno Online Servs., Inc. (In re Smart World Techs., LLC)*, 423 F.3d 166, 181 (2d Cir. 2005) (holding that § 1109(b) "does not authorize creditors to pursue settlement" of an adversary proceeding). Courts may further restrict intervention to "the claims raised by the original parties," *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 737 n.11 (D.C. Cir. 2003), or a particular set of issues, *see Harris v. Pernsley*, 820 F.2d 592, 599 (3d Cir. 1987). Finally, intervenors may be denied discovery, at least in some circumstances. *See United States v. Albert Inv. Co.*, 585 F.3d 1386, 1396 (10th Cir. 2009).

*In re Fin. Oversight & Mgmt. Bd.*, 872 F.3d at 61, 64 (emphasis added). In that case, the First Circuit noted that the creditors' committee sought only "limited participation," including "the ability to review discovery (but not to propound discovery requests), to attend depositions (but not to examine witnesses), and to file briefs and be heard at arguments." *Id.* at 61, 64. The court further noted that the committee's request appeared reasonable based on the case law, but remanded the matter for further determination. *Id.* at 64.

53.     If intervention were to be permitted here to some extent, this Court should limit the Committee's intervention to the types of monitoring the First Circuit cited with approval in *In re Fin. Oversight*. Such exercise of the Court's discretion would ensure that whatever interests the Committee is deemed to represent are heard, and any proceedings involving the Debtor and the Arbitration Participants are transparent, but the Debtor's estate will not be depleted unnecessarily. Indeed, this is exactly the kind of monitoring of the Arbitration that the Arbitration Participants' counsel advised—at the December 6, 2019 hearing on the Arbitration Motion—was possible under the applicable AAA Rules and more than acceptable to the Arbitration Participants. *See* Adv. Pro. Docket No. 46, p. 94.

54.     Accordingly, if the Court were inclined to grant the Committee's Motion in part, intervention should be limited to the monitoring and opportunity to be heard that the Committee

has already availed itself of to date in this Adversary Proceeding, and may continue to avail itself of in the Arbitration.

## CONCLUSION

55.     For all these reasons, the Arbitration Participants respectfully request that this Court (a) deny the Committee's Motion to intervene as a second, redundant plaintiff in this Adversary Proceeding; (b) alternatively, strictly limit the Committee's intervention to a monitoring role as described herein; and (c) grant such other and further relief as the Court deems just and proper.

DATED:  January 17, 2020.

SHERMAN & HOWARD L.L.C.

*s/ Eric E. Johnson*
Peter A. Cal
Eric E. Johnson
633 Seventeenth Street, Suite 3000
Denver, Colorado 80202
Telephone:  (303) 297-2900
Facsimile:   (303) 298-0940
E-mail:  pcal@shermanhoward.com
           ejohnson@shermanhoward.com

K&L GATES LLP

*s/ Brian D. Koosed*
Brian D. Koosed
Robert T. Honeywell
1601 K Street, N.W.
Washington, D.C. 20006
Telephone:  (202) 778-9204
Facsimile:   (202) 778-9100
E-mail:  Brian.Koosed@klgates.com
           Robert.Honeywell@klgates.com

**Attorneys for Frictionless, LLC, Changzhou Zhong Lian Investment Co. Ltd., Changzhou Inter Universal Machine & Equipment Co., Ltd., and Li Zhixiang**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 17, 2020, I electronically filed the foregoing **ARBITRATION PARTICIPANTS' RESPONSE TO THE MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO INTERVENE AS PLAINTIFF** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

| | |
|---|---|
| Aaron J. Conrardy, Esq. | Thomas P. Howard, Esq. |
| David Wadsworth, Esq. | Olayinka L. Hamza, Esq. |
| David Warner, Esq. | thoward@thowardlaw.com |
| aconrardy@wgwc-law.com | ohamza@thowardlaw.com |
| dwadsworth@wgwc-law.com | |
| dwarner@wgwc-law.com | |
| | |
| Kevin S. Neiman, Esq. | Debra Piazza, Esq. |
| kevin@ksnpc.com | dpiazza@montgomerylittle.com |
| | |
| Nathan G. Osborn, Esq. | Alan K. Motes, Esq. |
| nosborn@montgomerylittle.com | Alan.Motes@usdoj.gov |
| | |
| U.S. Trustee | Jiangang Ou |
| USTPRegion19.DV.ECF@usdoj.gov | jou@nguyen-chen.com |
| | |
| Risa Lynn Wolf-Smith, Esq. | Stephen M. Packman, Esq. |
| RWolf@hollandhart.com | spackman@archerlaw.com |

*s/ Roberta Neal*