# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO
### The Honorable Michael E. Romero

| | |
|---|---|
| In re:<br><br>FRICTIONLESS WORLD, LLC,<br><br>      Debtor. | Case No. 19-18459 MER<br><br>Chapter 11 |
| FRICTIONLESS WORLD, LLC,<br><br>      Plaintiff.<br><br>v.<br><br>FRICTIONLESS, LLC, CHANGZHOU INTER UNIVERSAL MACHINE & EQUIPMENT CO., LTD., LI ZHIXIANG, CHANGZHOU ZHONG LIAN INVESTMENT CO. LTD., SERENA LI, AND FRANK LI,<br><br>      Defendants. | Adversary No. 19-01282 MER |

## ORDER

The intersection of bankruptcy law and other legal fields is a common occurrence.  To be sure, bankruptcy filings to stop certain proceedings under family law or property law, for example, are fairly common.  While generally bankruptcy law trumps these other fields of law pursuant to the Supremacy Clause,[1] when bankruptcy law and another creature of federal law intersect, which law prevails?  Specifically, when a bankruptcy is filed in the midst of an arbitration proceeding, should the bankruptcy court or the arbitration panel hear the dispute?  This is the question the parties in this matter present to the Court.

## BACKGROUND

The events leading up to Frictionless World, LLC's ("**Debtor's**") bankruptcy filing are subject to wide-ranging dispute among the parties to

---

[1] U.S. Const. Art. VI, cl. 2.

this adversary proceeding. Debtor contends Frictionless, LLC was created in 2013 by Changzhou Zhong Lian Investment Co. Ltd. ("**ZL Investments**"), Li Zhixiang ("**Li**"), and the Debtor's CEO, Daniel Banjo ("**Banjo**"). They created Frictionless, LLC, as a pass-through entity to handle revenue transfers between Debtor and Li's other company Changzhou Inter Universal Machine & Equipment Co., Ltd. ("**CIU**" and together with ZL Investments and Li, the "**Li Defendants**"). To that end, Banjo, ZL Investments, and Li are parties to Operating Agreement for Frictionless, LLC ("**Operating Agreement**").[2]

It is Debtor's position the Li Defendants were aware of the Debtor's existence and specifically agreed to its involvement in the parties' venture in the Operating Agreement. According to the Debtor, CIU, which assembled and shipped Debtor's products prior to the Petition Date, acted in concert with Li and ZL Investments to cease fulfilling purchase orders beginning in late 2018 in an effort to terminate the Debtor's operations and reap the profits and market share. According to the Li Defendants, the Debtor's existence was a scheme hatched by Banjo as an effort to defraud the Li Defendants, who only became aware of the Debtor in late 2018.

Under either version of events, the discord between the Li Defendants on the one hand and the Debtor and Banjo on the other culminated in the initiation of an arbitration proceeding by ZL Investments against Banjo and the Debtor pursuant to the Operating Agreement in April 2019 (the "**Arbitration**").[3] Although not a party to the Operating Agreement, the Debtor agreed to participate in the Arbitration in exchange for CIU and Li's participation as well.[4]

The Debtor and Banjo asserted multiple counterclaims against the Li Defendants and Frictionless LLC (together, the "**Arbitration Participants**"),[5] and an arbitration panel was assembled to hear the parties' dispute, with an arbitration hearing scheduled for July 13-17, 2020.[6]

The Debtor filed for voluntary relief under Chapter 11 of the United States Code on September 30, 2019 (the "**Petition Date**"). Shortly

---

[2] Exh. 9. The Court notes Exhibit 9 was only admitted without the Exhibit B attached thereto.

[3] Exh. D at ¶ 79.

[4] Exh. 39 at ¶ 17.

[5] Exh. 39.

[6] Exh. U.

2

thereafter, the Debtor initiated this adversary proceeding against the Arbitration Participants, Serena Li, and Frank Li.[7] The Debtor asserts multiple claims for relief, including claims for fraudulent conveyance, breach of contract, fraudulent and negligent misrepresentation, civil conspiracy, and unjust enrichment. Moreover, the Debtor sought and obtained a Temporary Restraining Order enjoining the Arbitration Defendants from prosecuting the Arbitration.[8]

The Arbitration Participants have moved, in various forms,[9] for the Court to compel arbitration of the Debtor's claims asserted herein, a request which is resisted by the Debtor[10] and the Official Unsecured Creditors Committee.[11]

## ANALYSIS

Deciding whether this matter must be referred to arbitration, requires many preliminary steps in the analysis. Specifically, "before referring a dispute to an arbitrator, the court determines whether a valid arbitration exists."[12] "Although the Supreme Court has long recognized a 'liberal federal policy favoring arbitration agreements,' the question 'whether parties have a valid arbitration agreement at all' is a 'gateway matter' that is 'presumptively for courts to decide.'"[13] Moreover, because "[a]n agreement to arbitrate 'is simply a matter of contract between the parties,'"[14] courts will "'apply ordinary state-law principles governing the formation of contracts to

---

[7] Exh. D.

[8] ECF No. 5 (the "**Temporary Restraining Order**").

[9] *See* ECF Nos. 19, 20, 21, 22, 23, and 31 in the Adversary Proceeding and ECF Nos. 99, 102, 103, and 141 in the Administrative Case (collectively, "**Arbitration Motions**").

[10] *See* ECF No. 26 in the Adversary Proceeding and ECF No. 127 in the Administrative Case.

[11] *See* ECF Nos. 30 and 52 in the Adversary Proceeding and ECF No. 132 in the Administrative Case.

[12] *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S.Ct. 524, 530 (2019).

[13] *Campbell Investments, LLC v. Dickey's Barbecue Restaurants, Inc.*, 784 Fed. Appx. 627, 630-31 (10th Cir. 2019) (quoting *Nat'l Am. Ins. Co. v. SCOR Reins. Co.,* 362 F.3d 1288, 1290 (10th Cir. 2004) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)) and *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 570 n.2 (2013) (quoting *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003))).

[14] *Id.* at 631 (quoting *Walker v. BuildDirect.com Techs., Inc.*, 733 F.3d 1001, 1004 (10th Cir. 2013) (quoting *Avedon Engineering, Inc. v. Seatex*, 126 F.3d 1279, 1283 (10th Cir. 2004))).

3

determine whether the parties have agreed to arbitrate a given dispute.'"[15]

With respect to Colorado law on contract formation, the District Court of Colorado has summarized as follows:

> In determining whether a contract existed between the parties, "evidence of the parties' conduct, their oral statements and their writings, and other evidence illuminating the circumstances surrounding the making of an agreement are admissible to clarify the intent and purpose of the parties." *I.M.A., Inc. v. Rocky Mountain Airways, Inc.,* 713 P.2d 882, 888 (Colo. 1986). "The formation of a contract requires a bargain in which there is a manifestation of mutual assent to the exchange and a consideration." *Pierce v. St. Vrain Valley School District RE–1J,* 981 P.2d 600, 603 (Colo. 1999). While assent may be implied from the totality of circumstances and the acts of the parties, it must appear in some form. *Mumm v. Adam,* 134 Colo. 493, 307 P.2d 797, 801 (1957). [A] party may demonstrate assent to the terms of an offer either by promising to perform or by actually performing. *Industrial Products International, Inc. v. Emo Trans, Inc.,* 962 P.2d 983, 988 (Colo. App. 1997). An objective manifestation of assent is not rebutted by that same party's uncommunicated, subjective intent. *Avemco Insurance Co. v. Northern Colorado Air Charter, Inc.,* 38 P.3d 555, 559 (Colo. 2002).[16]

At the preliminary hearing on the Arbitration Motions, the Debtor conceded it agreed to arbitrate certain claims and counterclaims involving the Arbitration Participants.[17] To be sure, the Court was presented with ample undisputed evidence to support this, including a Submission to Dispute Resolution submitted on behalf of the Debtor and Banjo on June 24, 2019.[18] In the Submission Form, the Debtor specifically agreed to submit a dispute described as "Breach of contract; Breach of fiduciary duty; Breach of LLC Agreement, among others. . . ." to binding arbitration. Moreover, the Debtor actively participated in the arbitration proceedings for nearly five

---

[15] *Id.* (quoting *Walker*, 733 F.3d at 1004 (quoting *Hardin v. First Cash Fin. Servs., Inc.*, 465 F.3d 470, 475 (10th Cir. 2006))).

[16] *Vernon v. Qwest Communications Intern., Inc.*, 857 F.Supp.2d 1135, 1149 (D. Colo. 2012).

[17] Trans., Dec. 6, 2019, 70:18-22.

[18] Exh. M ("**Submission Form**").

4

months prior to the Petition Date,[19] clearly evidencing its agreement to arbitrate at least certain claims and counterclaims. Accordingly, the Court finds there is an arbitration agreement between the Debtor and the Arbitration Participants.

The Debtor, however, emphasizes it only agreed to arbitrate the discreet matters identified on the Submission Form which, at most, includes only one claim asserted in the instant Adversary Proceeding. Additionally, the Debtor maintains while it did agree to arbitrate certain matters, it did not agree to have those matters arbitrated specifically pursuant to (and, thus, subject to) the terms of the Operating Agreement, which includes a provision mandating arbitration of both claims relating to the Operating Agreement as well as questions of arbitrability.[20] The Arbitration Participants dispute this assertion, stating the Debtor agreed to arbitrate *all* of its claims involving the Arbitration Participants pursuant to the terms of the Operating Agreement. Moreover, the Arbitration Participants assert the Debtor's claims in this proceeding are substantially similar to the counterclaims it previously asserted in the Arbitration such that Debtor is merely attempting to skirt its previous agreement to arbitrate.

As such, the Court is faced with the next step in its inquiry: did the Debtor agree to arbitrate the specific claims asserted in this matter to arbitration? As explained below, however, whether this Court or the arbitration panel should determine this question of arbitrability is itself a separate, threshold consideration.

"Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so."[21] "Because 'arbitration is simply a matter of contract,' '[j]ust as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question "who has the primary power to decide arbitrability" turns upon what the parties agreed about *that* matter.'"[22]

Setting aside temporarily the question of whether the Debtor agreed to arbitrate specifically pursuant to the terms of the Operating Agreement (and

---

[19] *See, e.g.*, Exhs. I, M, O, P, U, V, and 39.

[20] Operating Agreement at ¶ 14.6.1.

[21] *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (quoting *AT&T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 649 (1986)).

[22] *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1280 (10th Cir. 2017) (quoting *First Options of Chicago*, 514 U.S. at 943).

5

thus to submit arbitrability questions to an arbitration panel), the evidence presented to the Court demonstrates the Debtor consented to a fairly broad agreement to arbitrate. As stated above, the Submission Form indicates the Debtor agreed to arbitrate the following claims: "Breach of contract; Breach of fiduciary duty; Breach of LLC Agreement, **among others**. . . ."[23] At the preliminary hearing on the Arbitration Motions the Debtor acknowledged this language but insisted it is "a meaningless statement because it doesn't give you any details."[24] This Court disagrees. While no specific details are provided, it is common sense the inclusion of "among others" in the listed claims means the Debtor intended, or at least reserved its right, to pursue additional claims against the Arbitration Participants in the course of the Arbitration. Moreover, the Debtor did in fact pursue injunctive relief against the Arbitration Participants in the Arbitration,[25] which was not specifically listed in the Submission Form.

While a broad agreement to arbitrate may not be "clear and unmistakable evidence" to arbitrate arbitrability, the Debtor also agreed to arbitrate according to the "Commercial Arbitration Rules and Mediation Procedures (AAA)."[26] These rules specifically provide:

> The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.[27]

As noted by the Tenth Circuit Court of Appeals, "when contracting parties incorporate the AAA rules into a broad arbitration agreement . . . such an incorporation clearly and unmistakably evinces their intent to arbitrate arbitrability."[28] The Tenth Circuit is not alone in such holding, noting "all of our sister circuits to address the issue have unanimously concluded that incorporation of the . . . AAA Rules constitutes clear and unmistakable evidence of an agreement to arbitrate arbitrability."[29]

---

[23] Submission Form (emphasis added).

[24] Trans., Dec. 6, 2019, 70:14-15.

[25] Exh. I.

[26] Submission Form.

[27] Exh. J, *Commercial Arbitration Rules and Mediation Procedures*, American Arbitration Association, R-7(a).

[28] *Dish Network LLC v. Ray*, 900 F.3d 1240, 1246 (10th Cir. 2018).

[29] *Belnap*, 844 F.3d at 1283 (citing *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir.

Additionally, under Colorado law the incorporation of the AAA Rules into an arbitration agreement relegates arbitrability questions to the arbitrator.[30]

Accordingly, under both Tenth Circuit and Colorado law, Debtor's agreement to arbitrate pursuant to the AAA Commercial Arbitration Rules dictates the Court's decision in this matter. Because the AAA Commercial Arbitration Rules specifically provide questions of arbitrability are to be determined by an arbitrator, the Court finds there is "clear and unmistakable evidence" the parties agreed to arbitrate arbitrability. "When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract."[31] As such, it makes no difference whether the Debtor bound itself specifically to the arbitration clause of the Operating Agreement, this Court has no choice but to refer this matter to the panel in the Arbitration for consideration of whether the claims asserted in this adversary proceeding are subject to arbitration.

## CONCLUSION

This ruling does not foreclose Debtor's arguments it did not consent to arbitration of the claims asserted in this proceeding. The Debtor can, and this Court is sure the Debtor will, make such arguments to the arbitration panel. It is simply not for this Court to decide. Accordingly, it is hereby

ORDERED the Arbitration Motions are GRANTED. The Temporary Restraining Order enjoining the Arbitration is hereby terminated. The Arbitration Participants and the Debtor shall proceed to the Arbitration in order to determine the arbitrability of the Debtor's claims presented in this adversary proceeding. The parties shall file separate status reports within sixty (60) days of this Order regarding the status of the Arbitration and any decision made with respect to the arbitrability of the Debtor's claims asserted herein.

Dated March 6, 2020

BY THE COURT:

Michael E. Romero, Chief Judge
United States Bankruptcy Court

---

2015); *Fallo v. High-Tech Inst.*, 559 F.3d 874, 878 (8th Cir. 2009); *Awuah v. Coverall N. Am., Inc.*, 554 F.3d 7, 11 (1st Cir. 2009); *Contec. Corp. v. Remote Solution, Co., Ltd.*, 398 F.3d 205, 208 (2nd Cir. 2005)).

[30] *Ahluwalia v. QFA Royalties, LLC*, 226 P.3d 1093, 1099 (Colo. App. 2009).

[31] *Henry Schein*, 139 S.Ct. at 529.